UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————————

ANN McCRACKEN, JOAN FARRELL,
SARAH STILSON, KEVIN McCLOSKEY,
CHRISTOPHER TRAPATSOS, and
KIMBERLY BAILEY, as individuals
and as representatives of the
classes,

         Plaintiffs,

   -vs-

VERISMA SYSTEMS, INC., STRONG
MEMORIAL HOSPITAL, HIGHLAND
HOSPITAL, and UNIVERSITY OF
ROCHESTER,

         Defendants.

**DECISION AND ORDER
No. 6:14-cv-06248(MAT)**

———————————————————————————

## INTRODUCTION

Ann McCracken ("McCracken"), Joan Farrell ("Farrell"), Sara
Stilson ("Stilson"), Kevin McCloskey ("McCloskey"), Christopher
Trapatsos ("Trapatsos"), and Kimberly Bailey ("Bailey")
(collectively, "Plaintiffs"), bring this action on behalf of
themselves and others similarly situated against Verisma Systems,
Inc. ("Verisma"), Strong Memorial Hospital ("Strong"), Highland
Hospital ("Highland"), and the University of Rochester ("U of R")
(collectively, "Defendants"). Verisma contracts with Strong,
Highland and the U of R (collectively, the "Healthcare Defendants")
to provide medical records to patients of those entities.
Plaintiffs, all of whom are patients who received medical treatment
at the Healthcare Defendants, claim that Defendants charged them
excessively for copies of their medical records, in violation of

-1-

New York Public Health Law ("PHL") § 18(2)(e). Plaintiffs also assert causes of action for unjust enrichment and for deceptive trade practices under New York General Business Law ("GBL") § 349(a).

## FACTUAL BACKGROUND

The Court assumes the parties' familiarity with the underlying facts giving rise to the instant litigation, and incorporates by reference the factual summary set forth in the Court's May 18, 2015 Decision and Order ruling on Verisma's motion to dismiss for lack of jurisdiction. See Dkt #35, pp 2-3. The Court will discuss the relevant factual allegations in further detail below, as necessary to the resolution of the parties' contentions.

## PROCEDURAL STATUS

In a Decision and Order (Dkt #35) entered May 18, 2015, the Court granted the motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure filed by Verisma and dismissed, without prejudice, the Amended Complaint for lack of subject matter jurisdiction. In brief, the Court found that the Amended Complaint did not allege sufficient facts to show that Plaintiffs had suffered cognizable injuries-in-fact for standing purposes, because it was Plaintiffs' law firm, and not Plaintiffs themselves, which was charged, and which paid, for the copies of the medical records at issue. Therefore, the Court found, Plaintiffs had not established their standing to sue.

The Court accordingly dismissed the Amended Complaint without prejudice and granted Plaintiffs leave to replead their allegations

regarding standing. The Court deferred ruling on the Healthcare Defendants' and Verisma's respective motions to dismiss (Dkt ## 21, 22) pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") until after Plaintiffs filed an amended complaint.

Plaintiffs timely filed their Second Amended Complaint (Dkt #40), to which they attached a number of documents, including the retainer agreements and the Health Insurance Portability and Accountability Act ("HIPAA") authorizations signed by each of the individual plaintiffs (Dkt ##40-5 to 40-16). Neither the Healthcare Defendants nor Verisma have filed a renewed motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1). For the reasons discussed below, the Court denies Verisma's motion to dismiss (Dkt #22) and the Healthcare Defendants' motion to dismiss (Dkt #21) in their entirety.

## STANDING

The Second Amended Complaint contains allegations that each of the individual plaintiffs signed retainer agreements with their law firm, Faraci Lange LLP ("the Firm" or "Plaintiffs' Counsel"). Pursuant to the retainer agreements, Plaintiffs were obligated to reimburse the Firm, out of any recovery obtained in their respective personal injury lawsuits, for all disbursements advanced by the Firm in connection with representing Plaintiffs in those lawsuits. See Second Amended Complaint ("SAC") ¶ 33 & Ex. 5 (McCracken); id. ¶ 46 & Ex. 7 (Farrell); id. ¶ 54 & Ex. 9 (Stilson); id. ¶ 62 & Ex. 11 (McCloskey); id. ¶ 70 & Ex. 13

(Trapatsos); id. ¶ 78 & Ex. 15 (Bailey). Each individual plaintiff subsequently reimbursed the Firm for the full amounts charged to the Firm by Verisma for copies of his or her medical records. See SAC ¶¶ 36, 38, 44 (McCracken); id. ¶¶ 49, 53 (Farrell); id. ¶¶ 57, 61 (Stilson); id. ¶¶ 65, 69 (McCloskey); id. ¶¶ 73, 77 (Trapatsos); id. ¶¶ 81, 85 (Bailey).[1]

The Court concludes that Plaintiffs' repleaded allegations regarding their injuries-in-fact have remedied the jurisdictional defects contained in the Amended Complaint. Plaintiffs have pleaded facts, and attached documentary evidence indicating that, at the time the Firm incurred the copying expenses, Plaintiffs were legally obligated to reimburse the Firm for expenses incurred in connection with representing them. Pursuant to the retainer agreements signed by Plaintiffs, Verisma's submission of copying charges to the Firm, and the Firm's payment of those charges would have given rise to a contingent liability on the Plaintiffs' part. That liability to repay the Firm for the copying expenses has given Plaintiffs standing to challenge the copying charges as excessive, "because Plaintiffs . . . have suffered an injury-in-fact (a legal duty to pay these excessive costs) traceable to the defendants responsible for the charges." Spiro v. Healthport Technologies, LLC, 73 F. Supp.3d 259, 269 (S.D.N.Y. 2014) (citations omitted).

**RULE 12(b)(6) STANDARD**

---

[1]

McCracken also remains obligated under her retainer agreement to reimburse the Firm for an additional amount expended for copies of medical records. See SAC ¶ 45.

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept "all factual allegations in the complaint and draw . . . all reasonable inferences in the plaintiff's favor." Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (internal quotation marks omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). In order to withstand dismissal, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. Conclusory allegations are not entitled to any assumption of truth and will not support a finding that the plaintiff has stated a valid claim. Lundy v. Catholic Health System of Long Island, Inc., 711 F.3d 106, 113 (2d Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678, 679 (2009)). As the Second Circuit has noted, "at a bare minimum, the operative standard requires the 'plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level.'" ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Twombly, 550 U.S. at 555).

## DISCUSSION

## I.  Verisma's Rule 12(b)(6) Motion to Dismiss

### A.  Overview

Verisma raises the following points in support of its motion to dismiss: (I) PHL § 18 is inapplicable due to Plaintiffs' failure to comply with its express terms; (ii) Plaintiffs' claims are barred by the voluntary payment doctrine; (iii) Plaintiffs fail to state a cause of action under GBL § 349(a); (iv) Plaintiffs fail to state a cause of action under PHL § 18(2)(e); and (v) Plaintiffs fail to state a cause of action for unjust enrichment.

**B.    The PHL Claims**

**1.    The Relevant Statutory Language**

Section 18(2) of the PHL deals with "[a]ccess by qualified persons" to their medical records and provides in pertinent part that

> (a) . . . upon the written request of any subject, a health care provider shall provide an opportunity, within ten days, for such subject to inspect any patient information concerning or relating to the examination or treatment of such subject in the possession of such health care provider.
> . . .
> (e) The provider may impose a reasonable charge for all inspections and copies, *not exceeding the costs incurred by such provider*. . . . However, the *reasonable charge for paper copies shall not exceed seventy-five cents per page*. . . .

N.Y. PUB. HEALTH L. § 18(2)(a), (e) (emphases supplied). A "qualified person" includes "any properly identified subject; . . . or an attorney representing a qualified person or the subject's estate who holds a power of attorney from the qualified person or the subject's estate explicitly authorizing the holder to execute a written request for patient information under this section. . . . ." N.Y. PUB. HEALTH L. § 18(1)(g). The statute in turn defines

-6-

"subject" as "an individual concerning whom patient information is maintained or possessed by a health care provider." N.Y. PUB. HEALTH L. § 18(1)(g).

### 2. Plaintiffs' Failure to Supply Verisma with Powers of Attorney

Verisma's main argument, and one that is not raised by the Healthcare Defendants, is that Plaintiffs are not entitled to PHL § 18's protections because they did not comply with the statutory requirements. Verisma points to PHL § 18(3), "Limitations on access", and in particular, subsection (h), which provides that "[w]here the written request for patient information under this section is signed by the holder of a power of attorney, a copy of the power of attorney shall be attached to the written request. . . . ." N.Y. PUB. HEALTH L. § 18(3)(h). Verisma argues that since the records requests were made by Plaintiffs' Counsel, they were required to submit powers of attorney signed by their clients (Plaintiffs). Verisma notes that Plaintiffs' Counsel submitted HIPAA authorizations only, and did not include powers of attorney. Therefore, Verisma reasons, Plaintiffs' medical records requests were non-compliant with PHL § 18, and Plaintiffs have no basis to claim any entitlement to the "reasonable charge" provision of PHL § 18(2)(e). Leaving aside the issue of whether Verisma waived this argument by nevertheless fulfilling Plaintiffs' allegedly unlawful requests and charging them $0.75 per page, the Court finds that it is without merit, as discussed below.

As an initial matter, it is true that when PHL was enacted, attorneys for plaintiff-patients were not "qualified persons"

entitled to the discounted statutory rate of not more than $0.75 per page in obtaining photocopies of their client' medical records. Boltja v. Southside Hosp., 186 A.D.2d 774, 775, 776, 589 N.Y.S.2d 341 (2d Dep't 1992). However, PHL § 18(1)(g) was amended effective July 30, 1992, to expand the definition of "qualified person" to include "an attorney representing or acting on behalf of the subject or the subject's estate[.]" Boltja, 186 A.D.2d at 775; see N.Y. PUB. HEALTH L. § 18(1)(g) ("'Qualified person' means any properly identified subject; . . . or an attorney representing a qualified person or the subject's estate who holds a power of attorney from the qualified person or the subject's estate explicitly authorizing the holder to execute a written request for patient information under this section. A qualified person shall be deemed a 'personal representative of the individual' for purposes of [HIPAA] . . . and its implementing regulations."). Plaintiffs always have been "[q]ualified person[s]" under PHL § 18(1)(g), and, pursuant to the 1992 statutory amendment, their attorneys now are as well. See, e.g., Boltja, 186 A.D.2d at 775-76.[2]

The Court has reviewed Davenport v. County of Nassau, 245 A.D.2d 331 (2d Dep't 1997), the only case cited by Verisma in support of this argument, and finds that it is inapposite. There, the plaintiff brought an action to recover damages for medical

---

[2]

The main case relied on by Plaintiffs was decided on February 21, 1992, prior to the amendment expanding the definition of qualified person. Matter of Castillo v. St. John's Episcopal Hosp., Smithtown, 151 Misc.2d 420, 580 N.Y.S.2d 992 (Sup. Ct. 1992). At the time Castillo was decided, attorneys were not "qualified persons" for purposes of PHL § 18(1)(g), and authorized requests for medical records to be produced to an attorney were governed provisions of the New York Civil Practice Law and Rules.

malpractice against various doctors, the County of Nassau, and the Nassau County Medical Center. The doctors filed a motion for a subpoena duces tecum against the county and the medical center, which had been ordered by the trial court to provide copies of the injured plaintiff's hospital record to the doctors at a charge of $0.75 per page. The Appellate Division reversed the order because the doctors were not "qualified person[s]" as defined in PHL § 18(1)(g), and the medical center was "not subject to the limit of $.75 imposed by statute on the amount which may be charged to qualified persons in connection with the photocopying of records[.]" Davenport, 245 A.D.2d at 332 (internal and other citations omitted). Put differently, the doctors were not entitled to the benefit of the $0.75 statutory cap on copying fees in PHL § 18(2)(e). The central issue in Davenport thus is not presented in this case, since both Plaintiffs and Plaintiffs' Counsel are included within the definition of "qualified person."

Plaintiffs argue that a power of attorney is only required to be submitted with a request for medical records "[w]here the written *request* for patient information . . . is *signed by the holder* of a power of attorney." N.Y. PUB. HEALTH L. § 18(3)(h) (emphases supplied). The power of attorney referenced in PHL § 18(1)(h) must "explicitly authoriz[e] the holder to execute a written request for patient information under this section[,]" N.Y. PUB. HEALTH L. § 18(3)(g). Plaintiffs point out that Subdivision 3(h) is analogous to Subdivision 3(g), which states that where the patient has died and no estate representative has been appointed,

a distributee of the deceased patient may request medical records, but only upon providing a copy of the patient's death certificate. See N.Y. PUB. HEALTH L. § 18(3)(g). Subdivisions 3(g) and 3(h) thus cover circumstances in which the actual patient is not able to request the records personally, due to, e.g., death or incapacity. Understandably, in such cases, the statute requires proof that the party requesting a third-party's medical records actually has the legal authority to do so.

In the usual circumstance, such as the present case, the records request is signed by the patient, and no power of attorney is required. Plaintiffs note that here, the HIPAA authorizations state in relevant part as follows, "*I . . . request* that health information regarding my care and treatment be released. . . ." E.g., Dkt #40-6, p. 2 of 2. The HIPAA authorizations, pursuant to which Plaintiffs personally requested release of their medical records, then were forwarded by Plaintiffs' Counsel to Verisma. Verisma apparently found these submissions sufficient to comply with the statute, since it provided copies of Plaintiffs' records to Plaintiffs' Counsel. Verisma's accusation of Plaintiffs' noncompliance with the statute is unconvincing in light of this fact.

### 3. Failure to State a Cause of Action Under PHL § 18(2)(e) Because Amount Charged Is Presumptively Reasonable

Verisma's second argument, which is also raised by the Healthcare Defendants, centers on the interpretation of PHL § 18(2)(e). Plaintiffs argue that PHL § 18(2)(e) allows providers to

impose a "reasonable charge" for copies, provided that this charge (1) does not exceed "the costs incurred by such provider" to make the copies; and (2) does not exceed "seventy-five cents per page" of records. Verisma, on the other hand, asserts that PHL § 18(2)(e) sets $0.75 as a presumptively reasonable price, so that a health care provider whose actual costs incurred were less than $0.75 per page (say, $0.50 per page), is authorized to charge $0.75 per page. Verisma's argument, which is echoed by the Healthcare Defendants, effectively allows healthcare providers to make a profit on copying medical records if they can keep their actual copying costs under $0.75 per page.

The Court agrees that the interpretation of PHL § 18(2)(e) urged by Verisma and the Healthcare Defendants "misreads the statute." Spiro, 73 F. Supp.3d at 272; see also id. at 272-73 ("[A] healthcare provider may not charge more than the actual 'costs incurred' for copies—but that charge is capped at $0.75 per page.") (citing Zamdborg v. Goldin, 14 Misc.3d 1207(A), 831 N.Y.S.2d 363 (Table), 2004 WL 5138088, at *3 (Sup. Ct. 2004) ("[T]he court grants costs to defendants in the amount *actually incurred* up to the limit of 75 cents per page. Both parties will be permitted to *submit documentary evidence of actual costs incurred*[3] in

---

[3] The Kings County Supreme Court's ruling in Zamdborg, supra, is instructive. If, as Verisma argues, $0.75 per page were the "presumptively reasonable" fee that healthcare providers could charge, regardless of their actual costs in producing the copies, there would have been no need for the court in Zamdborg to state that "[b]oth parties will be permitted to submit documentary evidence of actual costs incurred in photocopying the medical records in question." Zamdborg, 2004 WL 5138088, at *3.

photocopying the medical records in question.") (emphases added) (citation omitted). The Court declines to adopt the interpretation of the statute urged by Defendants, and it rejects this argument as a basis for dismissing Plaintiffs' PHL § 18 claims.

## C.    The GBL § 349 Claims

### 1.    Elements of a Prima Face Case

Section 349(a) of the GBL provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful." N.Y. GEN. BUS. L. § 349(a). "To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000) (per curiam) (citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 25 (1995)). "[A]n action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b), Fed. R. Civ. P., but need only meet the bare-bones notice-pleading requirements of Rule 8(a) . . . ." Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005); see also Ng v. HSBC Mortg. Corp., No. 07-CV-5434, 2010 WL 889256, at *14 (E.D.N.Y. Mar. 10, 2010) ("Deceptive conduct that does not rise to the level of actionable fraud, may nevertheless form the basis of a claim under New York's Deceptive Practices

Act,[4] which was created to protect consumers from conduct that might not be fraudulent as a matter of law, and also relaxes the heightened standards required for a fraud claim."). A GBL § 349 claim brought by a private plaintiff "does not require proof of actual reliance." <u>Pelman</u>, 396 F.3d at 511 (citing <u>Stutman v. Chemical Bank</u>, 95 N.Y.2d 24, 29 (2000); footnote omitted).

## 2. Failure to Allege a "Consumer Transaction"

Verisma argues that Plaintiffs have failed to allege "conduct that is consumer oriented[,]" <u>New York Univ. v. Continental Ins. Co.</u>, 87 N.Y.2d 308, 320 (1995), and thus their claim does not fulfill a threshold pleading requirement of GBL § 349(a). <u>See</u> <u>id.</u>

Under New York law, "the term 'consumer' is consistently associated with an individual or natural person who purchases goods, services or property primarily for 'personal, family or household purposes[.]'" <u>Cruz v. NYNEX Information Resources</u>, 263 A.D.2d 285, 289-90, 703 N.Y.S.2d 103 (1st Dep't 2000) (citing, <u>inter</u> <u>alia</u>, N.Y. GEN. BUS. L. §§ 399-c; 399-p(1)(c); N.Y. GEN. OBLIGATIONS L. § 5-327(1)(a)). Notably, "[t]he statute's consumer orientation does not preclude its application to disputes between businesses per se," although "it does severely limit it." <u>Id.</u> at 290.

Verisma relies heavily on an out-of-Circuit case, <u>Slobin v. Henry Ford Health Care</u>, 666 N.W.2d 632 (Mich. 2003), which rejected

---

4

GBL § 349 is also referred to as the New York Consumer Protection Act, <u>e.g.</u>, <u>Leonard v. Abbott Laboratories, Inc.</u>, No. 10-CV-4676(ADS)(WDW), 2012 WL 764199, at *16 (E.D.N.Y. Mar. 5, 2012), and the New York Deceptive Practices Act, <u>e.g.</u>, <u>Ng v. HSBC Mortg. Corp.</u>, 2010 WL 889256, at *14.

a similar claim brought under the Michigan Consumer Protection Act ("MCPA"), which applies to the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes. The majority in <u>Slobin</u> held that a claim for damages based upon a law firm's request for the medical records of a client it is representing in litigation cannot be sustained under the MCPA because "obtaining medical records for the purpose of litigation is not "primarily for personal, family, or household use," as required by the Michigan act. <u>Slobin</u>, 666 N.W.2d at 635 (reasoning that the "medical records were sought principally so that the law firm itself could engage in its own business or commercial enterprise, namely, the evaluation and pursuit of legal avenues to procure financial rewards and other relief for its client"). However, "the analysis of the <u>Slobin</u> majority has not commended itself to courts in other jurisdictions." <u>Ford v. Chartone, Inc.</u>, 908 A.2d 72, 82 & n. 11 (D.C. 2006) (collecting cases; citing, <u>inter alia</u>, <u>Mermer v. Medical Correspondence Servs.</u>, 686 N.E.2d 296, 299-300 (Ohio Ct. App. 1996) (holding that attorneys are agents of their clients and that the purchase of medical records by an attorney is actually a purchase by client himself and thus subject to state's consumer protection laws)).

The Court does not find the <u>Slobin</u> majority's analysis persuasive. First, it ignores that the fact that the nature of Plaintiffs' relationship with their attorneys was one of agency. <u>See</u>, <u>e.g.</u>, <u>Schwab v. Philip Morris USA, Inc.</u>, No. CV 04-1945(JBW). 2005 WL 2467766, at *3 (E.D.N.Y. Oct. 6, 2005) ("'The relationship

between an attorney and the client he or she represents in a lawsuit is one of agent and principal.'") (quoting <u>Veal v. Geraci</u>, 23 F.3d 722, 725 (2d Cir. 1994); citing RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS ch. 2, intro. note (2000) (the attorney-client relationship is, "from one point of view, derived from the law of agency")); <u>Slobin</u>, 666 N.W.2d at 636 (dissenting opn.) (citing <u>Friedman v. Dozorc</u>, 312 N.W.2d 585, 615 (Mich. 1981) ("Attorneys are the agents who provide the necessary expertise for clients who wish to litigate their rightful claims.")). Without Plaintiffs as clients presenting potential legal claims, Plaintiffs' medical records were of no use to their attorneys' "business or commercial enterprise." Second, Plaintiffs did not bring these personal injury lawsuits as part of a commercial dispute; rather, through these lawsuits, Plaintiffs sought to restore themselves, personally, to their respective pre-injury statuses. <u>See</u> <u>Slobin</u>, 666 N.W.2d at 636 (dissenting opn.). As the District of Columbia Court of Appeals in <u>Ford</u> noted, "[u]sing medical records to secure compensation for injuries in a lawsuit is no less 'personal' than is using them to secure insurance coverage or, for that matter, a second medical opinion, employment, medical leave, and other personal benefits. A motive may be pecuniary and still be personal." <u>Ford</u>, 908 A.2d at 83. The Court accordingly finds that Plaintiffs have pleaded conduct that is consumer-oriented for purposes of their GBL § 349 claim.

### 3. Failure to Allege Materially Misleading Conduct

Verisma contends that, as a matter of law, Plaintiffs cannot show that they were materially mislead, because Verisma's invoices fully disclosed the costs of obtaining copies of the medical records before payment was made.

The New York Court of Appeals has adopted "an objective definition of deceptive acts and practices, whether representations or omissions," by "limit[ing] [them] to those likely to mislead a reasonable consumer acting reasonably under the circumstances." Oswego Laborers' Local 214 Pension Fund, 85 N.Y.2d at 26. In the case of omissions, such as those at issue in this case, GBL § 349(a) "does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation[.]" Id.

With those principles in mind, the Court turns to the allegations in the Second Amended Complaint. Plaintiffs allege that (1) the fees they were charged "exceeded the cost to produce the medical records," (2) "[t]he cost to produce the medical records was substantially less than seventy-five cents per page," and (3) the charges "include[d] built-in kickbacks" from Verisma to the Health Provider Defendants. Plaintiffs also cited materials from Verisma's website and other websites advertising that Verisma's clients "keep more of the [record] release revenue," "improve cash flow," and improve financial return" by contracting with Verisma. See, e.g., SAC ¶¶ 3, 24-29. Taking these allegations as true, Plaintiffs have stated a plausible claim with respect to Verisma's alleged omission in failing to disclose that its actual cost of

photocopying was less than $0.75 per page. Indeed, "[w]ithout disclosure of . . . a cost differential, a fact known only to [Verisma], a reasonable consumer, appreciating that the statute permitted healthcare providers to charge up to $0.75 cents per page to recoup their actual costs, could be misled to believe that [Verisma's] actual cost was $0.75 per page (or more)." Spiro, 73 F. Supp.3d at 274 (finding adequate allegations of materially misleading conduct where complaint stated simply that the fees charged to the plaintiffs exceeded the defendant's cost to produce the medical records, and the cost to produce the medical records was substantially less than $0.75 per page) (citing In re Coordinated Title Ins. Cases, 2 Misc.3d 1007(A), 784 N.Y.S.2d 919 (Table), 2004 WL 690380 (Sup. Ct. 2004) (granting motion for class certification of a GBL § 349(a) claim where the "question raised in the complaint involve[d] the conduct of the defendants in allegedly overcharging or failing to notify the members of the putative class of the availability of the mandated discounts")). Indeed, the New York Court of Appeals has recognized that where, as here, "the business alone possesses material information that is relevant to the consumer and fails to provide this information[,]" Oswego Laborers' Local 214 Pension Fund, 85 N.Y.2d at 26, the "scenario is quite different[.]" Id. At this stage, the Court finds that Plaintiffs have adequately alleged materially misleading conduct for purposes of stating a GBL § 349 claim.

### 4.    Failure to Plead Intent to Defraud

Verisma contends that Plaintiffs have failed to plead knowing misconduct or intent to defraud or mislead on Verisma's part. As a matter of New York law, Plaintiffs need not "establish the defendant's intent to defraud or mislead," <u>Oswego Laborers' Local 214 Pension Fund</u>, 85 N.Y.2d at 26 (quoted in <u>Spiro</u>, 73 F. Supp.3d at 274), in order to prevail under GBL § 349(a). Therefore, Plaintiffs' alleged failure to plead intent does not provide a basis for dismissal of their GBL § 349 claim.

### 5. Inapplicability of GBL § 349(a) Because Plaintiffs' Attorneys Were Sophisticated Intermediaries

Verisma contends that Plaintiffs' attorneys were sophisticated intermediaries and, thus, there was no risk of consumer confusion, making GBL § 349(a) inapplicable. The Court finds the cases relied upon by Verisma to be inapposite, as discussed further below.

In <u>In re Rezulin Prods. Liab. Litig.</u>, 392 F. Supp. 2d 597, 614 (S.D.N.Y. 2005) ("<u>Rezulin</u>"), the district court had to determine whether Warner–Lambert's marketing efforts to persuade Medco to include the drug Rezulin in its formularies constituted consumer-oriented conduct for purposes of GBL § 349(a). <u>See</u> 392 F. Supp.2d at 613. The district court found that even though Rezulin ultimately would be purchased by diabetes patients, Warner-Lambert's conduct was directed at Medco, another large, sophisticated business entity—not at the diabetes patients. <u>Id.</u>; <u>see also</u> <u>id.</u> at 614 ("The representations that [Warner-Lambert Company] made to Medco were not intended for diabetes patients, the ultimate consumers."). Because "[a] sophisticated business entity—Medco—acted in an intermediary role," this "reduc[ed] the

potential that parties in an inferior bargaining position . . .
would be deceived." Id. at 614. Therefore, the district court
found, Warner-Lambert's conduct did not fall within the ambit of
GBL § 349(a).

Verisma also relies on Weiss v. Polymer Plastics Corp., 21
A.D.3d 1095, 802 N.Y.S.2d 174 (1st Dep't 2005), which involved the
question of whether a manufacturer's sale of a stucco product to
the installer of the stucco product constituted consumer-oriented
conduct with regard to the homeowners who had hired the installer.
The Appellate Division found that the homeowners had failed to show
consumer-oriented conduct, noting that the transaction in that case
was between two companies in the building construction and supply
industry, and it did not involve any direct solicitation of the
homeowners by the manufacturer. Further, the installer who acted in
an intermediary role in the transaction was a sophisticated
business entity. Weiss, 21 A.D.3d at 1097, 802 N.Y.S.2d 174
(citations omitted).

In Rezulin and Weiss, the courts found that the parties
standing in between the allegedly culpable defendant and the
plaintiff were "sophisticated intermediaries" because they
possessed specialized knowledge about the products at issue. Here,
in contrast, Plaintiffs' attorneys cannot be said to have been
"sophisticated intermediaries" regarding Verisma's medical records
business and its contract with the Healthcare Defendants. As
discussed above, the cost differential (if any) was not disclosed
to Plaintiffs or their attorneys; nor did Plaintiffs or their

attorneys have access to Verisma's contract with the Healthcare Defendants. Thus, neither <u>Rezulin</u> and <u>Weiss</u> reflect the situation in the present case, where Plaintiffs have alleged that their attorneys were in the same inferior position as their clients because no one had access to Verisma's true cost of copying the medical records or to Verisma's contract with the Healthcare Defendants. The Court accordingly rejects Verisma's "sophisticated intermediary" argument as a basis for dismissing Plaintiffs' GBL § 349(a) claim.

### 6. Failure to Allege Actual Injury

Verisma argues that the GBL § 349(a) claim fails because Plaintiffs did not actually pay the copying costs, and therefore they did not sustain any actual injuries. As discussed above, Plaintiffs' Second Amended Complaint has remedied the deficiencies with regard to the element of actual injury. Because Plaintiffs have sufficiently alleged actual injuries, the Court declines to dismiss Plaintiffs' GBL § 349(a) claim on this basis.

### D. Voluntary Payment Doctrine

Verisma asserts that all of Plaintiffs' claims are barred because Plaintiffs voluntarily paid the $0.75-per-page copying fee. The voluntary payment doctrine is a creature of common-law which "bars recovery of payments voluntarily made *with full knowledge of the facts*, and in the *absence of fraud* or mistake of material fact or law." <u>Dillon v. U-A Columbia Cablevision of Westchester, Inc.</u>, 100 N.Y.2d 525, 526 (2003) (emphases supplied). Courts have declined to apply the voluntary payment doctrine when, for

instance, "a plaintiff's claim is predicated on a lack of full disclosure by defendant." Fink v. Time Warner Cable, 810 F. Supp.2d 633, 649 (S.D.N.Y. 2011) (citing Spagnola v. Chubb Corp., 574 F.3d 64, 73 (2d Cir. 2009) (issue of when insured knew or should have known that insurer's increase in amount of renewal premiums for homeowner's policy exceeded amount permitted by contract involved fact question that could not be resolved on motion to dismiss insured's breach of contract claim against insurer pursuant to voluntary payment doctrine) (citing Samuel v. Time Warner, Inc., 10 Misc.3d 537, 809 N.Y.S.2d 408, 418 (Sup. Ct. 2005) (finding that voluntary payment doctrine did not apply to claims "predicated on the absence of full disclosure at the time of installation")).

Here, Plaintiffs allege that they lacked full knowledge of the facts regarding the actual costs to Verisma of copying their medical records. They further allege that they were materially misled by Verisma's omissions in failing to disclose it was going to charge them an amount greater than its actual costs incurred in copying their records. In similar cases, courts have found that the voluntary payment doctrine does not bar a plaintiff's GBL § 349(a) claim. See Spiro, 2014 WL 4277608, at *11 ("That defendants disclosed in advance their intention to charge $0.75 per page, or that plaintiffs 'voluntarily agreed' to pay this figure, does not preclude a claim under Section 349(a), where defendants allegedly failed to disclose that their actual costs were below that figure.") (citations omitted); Fink, 810 F. Supp.2d at 649 (denying summary judgment to internet provider and finding voluntary payment

doctrine inapplicable where "[i]ssues of disclosure, notice, and authorization [we]re very much contested", customers alleged defendant made misrepresentations about its high-speed internet service to increase its profits, and customers alleged that defendant's policy was to misrepresent to customers the reasons for slow service). At this juncture, the Court finds that application of the voluntary payment doctrine to dismiss Plaintiffs' claims would be premature. See Spagnola, 574 F.3d at 73 (stating that although the voluntary payment doctrine may ultimately bar the plaintiff's claims, "it is too early in this case to conclusively answer that question").

### E. Unjust Enrichment Claim

A cause of action for unjust enrichment "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790 (2012). To state such a claim in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at plaintiff's expense; and (3) that "equity and good conscience require restitution." Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000) (citation omitted).

Verisma first contends that Plaintiff's claim for unjust enrichment should be dismissed because Plaintiffs' counsel had an "actual agreement" with Verisma to obtain the medical records at $0.75 per page. "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes

-22-

recovery in quasi contract for events arising out of the same subject matter." <u>Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.</u>, 70 N.Y.2d 382, 388 (1987). To establish the existence of a contractual relationship, Verisma points to allegations that Plaintiffs' counsel requested medical records, Verisma sent Plaintiffs' Counsel an invoice of the amount to be charged, and Plaintiffs' Counsel paid the invoice. Verisma does not cite any legal authority in support of its argument that payment of an invoice, without more, creates an express or implied contract. Because Verisma has not established the existence of a valid and enforceable written contract governing the purchase of Plaintiffs' medical records, the Court will not dismiss Plaintiffs' unjust enrichment claim on this basis.

Verisma next argues that Plaintiffs' unjust enrichment claim fails because they had no direct dealing or substantive relationship with Verisma. "New York law does not require an unjust enrichment plaintiff to plead 'direct dealing,' or an 'actual, substantive relationship' with the defendant." <u>Waldman v. New Chapter, Inc.</u>, 714 F. Supp.2d 398, 403 (E.D.N.Y. 2010) (quoting <u>Sperry v. Crompton Corp.</u>, 8 N.Y.3d 204, 215-16 (2007)).[5] Indeed, the plaintiff "need not be in privity with the defendant to state a claim for unjust enrichment." <u>Sperry</u>, 8 N.Y.3d at 215. All that

[5] In <u>Waldman</u>, the district court observed that the case upon which Verisma relies here, <u>Redtail Leasing, Inc. v. Bellezza</u>, 95-CV-5191, 1997 WL 603496, at *8 (S.D.N.Y. 1997), "accurately describe[d] New York law in 1997, . . . [b]ut [it] is not the law today, as promulgated by New York's own courts." 714 F. Supp.2d at 403 (citation omitted).

-23-

is required is that the plaintiff's relationship with a defendant "not [be] too attenuated." <u>Id.</u> 216. Here, Plaintiffs' Counsel, who dealt directly with Verisma, were acting as their agents. "[C]ourts have found privity to exist in relationships such as . . . fiduciary . . . [and] agent[.]" <u>Liao v. Holder</u>, 691 F. Supp.2d 344, 354 & n. 12 (E.D.N.Y. 2010) (citations omitted). Plaintiffs therefore have adequately pled the existence of a relationship with Verisma that is not "too attenuated" for purposes of stating a plausible unjust enrichment claim.

## II.  The Healthcare Defendants' Motion to Dismiss

### A.  Overview

The Healthcare Defendants' Rule 12(b)(6) motion to dismiss asserts that Plaintiffs have failed to plead the element of causation with regard to Count I, as well as the element of actual injury with regard to Count IV (GBL § 349(a)). However, as discussed above, the Court has found that the Second Amended Complaint adequately pleads cognizable injuries-in-fact. Further, in its previous Decision and Order, the Court found that the Amended Complaint sufficiently alleged causation. The Court accordingly declines to dismiss Counts I and IV on these grounds.

The Healthcare Defendants also argue that Counts II (unjust enrichment) and IV fail as a matter of law, and that Plaintiffs' claim for treble damages under GBL § 349(a) should be dismissed.[6]

### B.   Failure to Allege Improper Benefit

---

[6]
    Plaintiffs' Third Cause of Action is asserted against Verisma only. <u>See</u> SAC, p. 20.

The Healthcare Defendants assert that Plaintiffs allege only that their counsel paid Verisma, not them, for handling their medical records requests. Therefore, the Healthcare Defendants contend, Plaintiffs have not alleged a required element of an unjust enrichment claim, i.e., that Healthcare Defendants received money to which they are not entitled. In support of this argument, the Healthcare Defendants have submitted an affidavit from Donna Barnard ("Barnard"), Director of Information Management at the U of R. Although Barnard admits that the U of R's contract with Verisma allows Verisma to pass along any surplus revenue earned from processing records requests to the Healthcare Defendants, see Affidavit of Donna Barnard ("Barnard Aff.") (Dkt #21-1), ¶ 14, the Healthcare Defendants "have never been compensated or received any revenue for the handling of [records] requests, either from patients themselves or from Verisma." Id. ¶¶ 3, 15-17.

As it is generally improper to consider factual averments on a Rule 12(b)(6) motion, the Court will not consider the Barnard affidavit for the purposes of resolving the Healthcare Defendants' motion to dismiss. See, e.g., Wachtel v. National R.R. Passenger Corp., No. 11-CV-613, 2012 WL 292352, at *2 (S.D.N.Y. Jan. 30, 2012) ("While Plaintiff attached an affidavit to his opposition brief in an attempt to support his argument, the Court cannot consider affidavits in ruling on a motion to dismiss.") (citing Cyril v. Neighborhood P'ship II Housing Dev. Fund, Inc., 124 F. App'x 26, 27 n. 2 (2d Cir. 2005) (unpublished opn.) (stating that in ruling on motion to dismiss, it "would have been improper" for

district court to consider affidavits presented by defendant) (citing <u>Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.</u>, 369 F.3d 212, 217 (2d Cir. 2004) (review of motion to dismiss "is generally limited to the facts and allegations that are contained in the complaint and in any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits") (citations omitted)). Because the Court declines to consider any of the factual averments in Barnard's affidavit, it is not necessary to strike the affidavit or convert the Healthcare Defendants' motion to one for summary judgment.

### C.  Failure to Allege Material Misrepresentations

The Healthcare Defendants argue that Plaintiffs cannot sustain a GBL § 349 claim because they have not "provide[d] evidence to show" that the Healthcare Defendants engaged in deceptive acts or practices. In opposing a Rule 12(b)(6) motion, it is not Plaintiffs' burden to "[p]rovide evidence" in support of their claims. Furthermore, as discussed above in connection with its resolution of a similar argument raised by Verisma, the Court has found that Plaintiffs have sufficiently alleged the element of "material misrepresentation" for purposes of stating a GBL § 349 claim.

### D.  Failure to Plead a Claim for Treble Damages

The Healthcare Defendants also urge dismissal of Plaintiffs' claim for treble damages under GBL § 349, which allows for treble

damages[7] up to $1,000 per violation in the event that a defendant willfully or knowingly violated the provision. <u>Koch v. Greenberg</u>, 14 F. Supp.3d 247, 262 (S.D.N.Y. 2014) (upholding jury's award of treble damages since there was sufficient trial evidence from which jury could infer that defendant "made misrepresentations knowingly") (citing N.Y. GEN. BUS. L. § 349(h) (providing, <u>inter alia</u>, that "[t]he court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section")). At this early stage of the proceedings, the Court denies the Healthcare Defendants' request to foreclose Plaintiffs from seeking treble damages.

## CONCLUSION

For the reasons set forth above, the Court denies Verisma's Motion to Dismiss (Dkt #22) in its entirety and denies the Healthcare Defendants' Motion to Dismiss (Dkt #21) in its entirety.

---

[7] "[E]ven though the statutory language [of GBL § 349] only expressly provides for actual or treble damages, 'limited' punitive damages are also permitted, as recognized by the New York Court of Appeals." <u>Cohen v. Narragansett Bay Ins. Co.</u>, No. 14-CV-3623 PKC, 2014 WL 4701167, at *3 (E.D.N.Y. Sept. 23, 2014) (citing <u>Karlin v. IVF Am., Inc.</u>, 93 N.Y.2d 282, 291 (1999); other citations omitted).

Plaintiffs may proceed on their Second Amended Complaint (Dkt #40).

**SO ORDERED.**

**S/ Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated:     September 16, 2015
           Rochester, New York