UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANN McCRACKEN; JOAN FARRELL; SARAH STILSON; KEVIN McCLOSKEY; CHRISTOPHER TRAPATSOS; and KIMBERLY BAILEY, as individuals and as representatives of the classes,<br><br>                  Plaintiffs,<br><br>vs.<br><br>VERISMA SYSTEMS, INC.; UNIVERSITY OF ROCHESTER; STRONG MEMORIAL HOSPITAL; and HIGHLAND HOSPITAL,<br><br>                  Defendants. | Case No.: 6:14-cv-06248-MAT-JWF |

## DECLARATION OF WILLIAM G. KRIEGER

I, William G. Krieger, hereby submit this Declaration in support of Plaintiffs' Motion for Class Certification.

### *Qualifications and Experience*

1. I am a Managing Director and Shareholder at Gleason & Associates, P.C. a certified public accounting and consulting firm based in Pittsburgh, Pennsylvania, specializing in forensic accounting, litigation support and business valuation. I have personal knowledge of the facts stated herein and can testify competently to those facts. I make this declaration in support of Plaintiffs' Motion for Class Certification.

2. I hold a Master's Degree in Business Administration and a Bachelor of Science Degree in Accounting. I am a Certified Public Accountant, and hold the advanced credentials of Accredited in Business Valuation, Certified in Financial Forensics and Chartered Global

1

Management Accountant from the American Institute of Certified Public Accountants, and Certified Fraud Examiner from the Association of Certified Fraud Examiners.

3. Since joining Gleason & Associates, P.C. in 2006, I have developed extensive experience in quantifying financial damages related to breach of contract claims, shareholder disputes, intellectual property infringement, fraudulent conveyances, class action lawsuits and business interruption claims. I lead the firm's litigation support, business valuation, and forensic accounting/financial reorganization practice areas and have provided expert witness testimony in state and federal courts across the country as well as before regulatory boards and arbitration panels.

4. During my 32-year professional career, I have been responsible for the accounting, budgeting, cost reporting, billing and collection, and financial reporting functions of a number of healthcare business entities. Prior to joining Gleason and Associates, I was employed by the University of Pittsburgh Medical Center ("UPMC") as the Vice President of Finance of UPMC Behavioral Health (UPMC's $500 million behavioral health operating unit) and Western Psychiatric Institute and Clinic (the largest psychiatric research center in the U.S., and the largest provider of services to individuals with behavioral health, substance abuse and intellectual disabilities in Pennsylvania). I am a former adjunct faculty member at the University of Pittsburgh, School of Health and Rehabilitation Sciences, Department of Health Information Management, where I have taught graduate and undergraduate classes in Healthcare Accounting and Finance. A copy of my curriculum vitae is attached as **Exhibit A**.

### *Scope of Engagement and Materials Considered*

5. I have been asked by counsel for Ann McCracken, Joan Farrell, Sara Stilson, Kevin McCloskey, Christopher Trapatsos, and Kimberly Bailey (collectively, "Plaintiffs") to analyze certain issues pertaining to Plaintiffs' Motion for Class Certification in the above-captioned

2

litigation against Verisma Systems, Inc. ("Verisma"), the University of Rochester ("UR"), Strong Memorial Hospital ("SMH") and Highland Hospital ("Highland") (collectively, "Defendants"). Specifically, I have been asked to analyze the following:

    a. The methods by which Defendants historically have (or, in the absence of actual practice, alternatively could have) tracked and/or calculated the costs incurred to respond to requests for medical records from Plaintiffs and putative Class Members;

    b. Whether, and the extent to which, Plaintiffs and putative Class Members were overcharged by Defendants for copies of their medical records in violation of New York Public Health Law § 18, by Defendants charging Plaintiffs and putative Class Members[1] amounts exceeding the lower of the actual costs to produce such records or seventy-five cents per page;[2] and

    c. Whether class-wide damages can be readily determined from Defendants' records and other class-wide evidence;

6. In preparing my analysis, I relied on documents provided to me by Plaintiff's counsel, including:

- Various pleadings including Plaintiff's Second Amended Complaint (the "Amended Complaint") and Defendants' Answers to the Amended Complaint;
- Documents produced in discovery in this litigation as identified in detail on **Appendix 1**;
- Deposition transcripts of the following individuals:
  - Donna Barnard – Health Information Management Director, URMC
  - Annette Fenwick – Controller, Verisma

---

[1] Either directly or through a "Qualified Person," as defined in New York Public Health Law §18(1)(g)-(h).
[2] New York Public Health Law §18(2)(e).

- James C. Moore II, Esq. – Chief Legal Officer, Verisma
- Andrew McManus – Senior Vice President, Verisma
- Anne Silkey – Application Analyst, URMC Information Services Division
- Kelly Featherly – Application Coordinator, URMC IT Department
- Kristen Schepisi-Dilg – HIM Release of Information Manager, SMH and Highland

7. To the extent that additional information is provided to me after the date of this declaration, I reserve the right to update my analysis and opinions as appropriate.

## *Background*

8. Plaintiffs are individuals who retained the law firm of Faraci Lange, LLP ("Faraci") to represent Plaintiffs in personal injury matters. Each Plaintiff had been treated at Highland or SMH, and requested his or her medical records from Highland and/or SMH (through Faraci) for purposes of his or her personal injury case. In each instance, Plaintiff received, was invoiced for, and paid (through Faraci) for copies of the medical records. Plaintiffs allege that the fees charged to and paid by each Plaintiff exceeded the cost to produce these medical records.[3]

9. Verisma is a for-profit corporation that manages and produces medical records for health care providers including UR, SMH and Highland, as well other health care providers in New York.[4]

10. UR is a not-for-profit educational institution that owns and operates several healthcare facilities, including but not limited to Highland and SMH (two not-for-profit hospitals

---

[3] Second Amended Complaint (paragraphs 33 through 85).
[4] Second Amended Complaint (paragraph 13).

located in Rochester, New York), and markets such healthcare facilities under the marketing names "University of Rochester Medical Center" and "UR Medicine."[5]

11. Plaintiffs allege that Verisma has contracts with Highland and SMH (and other New York healthcare providers) to (a) manage their medical records, (b) respond to requests for medical records, and (c) produce such records to patients and other qualified persons.

12. Plaintiffs allege that Defendants charged Plaintiffs $0.75 per page for medical records, and that the actual cost of providing medical records is far below $0.75 per page. Plaintiffs further allege that the profits are then split between Verisma, UR, Highland and SMH (and other healthcare providers).

13. Plaintiffs allege that such practices violate New York Public Health Law § 18, and are also deceptive, misleading and unlawful in violation of New York Gen. Bus. Law §349 *et seq.*

14. Plaintiffs currently seek Class Certification to represent the following proposed class and two proposed subclasses:

> **URMC Medical Records Class**
>
> All persons who (1) requested copies of medical records (either by themselves or through a lawyer, personal representative, or other qualified person acting on their behalf) from a health care facility owned and/or operated by the University of Rochester, (2) were charged by or through Verisma Systems, Inc. for copies of such records in accordance with Verisma's "NY Fee Schedule PHL 18," and (3) paid such charges (either directly or through the person making the request on their behalf) and had their records released by or through Verisma on or after May 14, 2011, excluding any principals or employees of Defendants.
>
> **Highland Sub-Class**
>
> All persons in the URMC Medical Records Class who requested copies of medical records through Highland Hospital and whose records were released on or after May 14, 2011.

---

[5] Second Amended Complaint (paragraph 14 through 16).

**Strong Sub-Class**

All persons in the URMC Medical Records Class who requested copies of medical records through Strong Memorial Hospital and whose records were released on or after May 14, 2011.

*Verisma's Historical Tracking/Calculation of the Costs Incurred to Respond to Requests for Medical Records*

15.  My analysis of Verisma's method for tracking the costs incurred to respond to requests for medical records was developed based upon financial and statistical information produced by Verisma through discovery, and the deposition testimony of Annette Fenwick, Verisma's Controller. Based on my analysis, and consistent with standard cost accounting practices, **Verisma does not individually track the specific costs incurred to produce each customer's medical records request**. Instead, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

16.  While Verisma uses these standard cost accounting practices ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Verisma does not calculate, track or report the costs it incurs on a by-record or by-page basis. As noted in the deposition of Annette Fenwick:[6]

> Q:  Does Verisma track the costs incurred for each individual [record] request?
> A:  No
> Q:  Does Verisma track the labor expense or time spent on each individual request?
> A:  No

---

[6] Deposition of Annette Fenwick, dated September 16, 2016 (the "Fenwick Deposition"), page 33.

17. ███████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████.[7] ███████████████████████████████

████████████████████████████████████████████. Below I have

provided the specific documents reviewed and methods followed by Verisma ███████████

█████████████████:

a.  Through discovery, Verisma provided ████████████████████████

████████████████████████████████████████████████████████████.

See **Exhibit B** for an example of ███████████████████ for 2014. Verisma also

provided similar ████████████████████████████████████████

█████████.[8] See **Exhibit C** for an example of ████████████████ for 2014. Finally,

Verisma has produced ████████████████████████████████████

████████████████████████████████.[9] See **Exhibit D** for an example of █████████

for 2014. Based on my analysis, Verisma does not ███████████████████████

███████████████████████████ during the ordinary course of business.

b.  Through discovery, Verisma also provided ██████████████████

███████████████████████████████████ for each monthly period from January

2012 through December 2015. See **Exhibit E** for an example of █████████ for the month of

January 2014. These "statistics" include █████████████████████████████

████████████████████████████████████████████████████████████

---

[7] Fenwick Deposition, pages 49-50, and 52. ██████████████████████████████████
████████████████████████████████████████████████████████████ For purposes of
this declaration I may refer to these ███████████████ as financial classes and cost centers interchangeably.
[8] ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████.
[9] VERSIMA111517, VERISMA111565, VERISMA111421, VERISMA111607.

███████████████████████████████████████████████████████ during each monthly period.[10]

    c.    The indirect costs captured in Verisma's ████████████ ████████████ were allocated by Verisma to each customer based on each customer's "statistics" (as Verisma ████████████████████ ███).[11]

    d.    Based on Annette Fenwick's deposition testimony and my preliminary analysis of Verisma's ██████████████████████ for the periods January 2012 through December 2015, Verisma █████████████████ █████████████████ in the ordinary course of business based on the following "statistics"[12]:

- ████████████████████████████████████████████
  ████████████████████████████████████████████
  ███████████████████████████

- ████████████████████████████████████████████
  ████████████████████████████████████████████
  ███████████████████████████████████

---

[10] 2012 [VERISMA111532-111555], 2013 [VERISMA111582-111605], 2014 [VERISMA111439-111459], and 2015 [VERISMA111491-111502] and Fenwick Deposition p. 21.
[11] Fenwick Deposition, pages 32-33. The ████████████ (████████████████████████████) ████████████████████████████████. Based on my review of Annette Fenwick's deposition (p. 130) ████████████████████████, Verisma made the following changes to their ████████████████████ ████████████████ ████████████████████████ ████████████████ █████████████████████████████████████████████ Given that these changes occurred after the instant litigation was filed, I have limited my analysis the four full years for which we have data (2012 through 2015).
[12] Excel versions: 2012 [VERISMA111532-111555], 2013 [VERISMA111582-111605], 2014 [VERISMA111439-111459], and 2015 [VERISMA111491-111502] and Fenwick Deposition, pages 83, 107, 121, and 122. The ████████ ████████████████████████████ were allocated using the same methodology until January 2016, when the methodology was changed. See Fenwick Deposition p. 130.

■ 

■ 

18.    Annette Fenwick confirmed the details of Verisma's cost accounting process during her deposition:

> Q:    So if you were asked to – if someone at Verisma asked you to come up with a cost, the amount of cost it took to process and fulfill a specific request, how would you go about doing that?
>
> A:    Well, it would be all based on statistics. Same way I produce or allocate costs to the departments. It's all statistical. All of these folks' time is spent working record jacket, et cetera, and so we allocate their cost based on statistics.
>
> Q:    And when you say statistics, you mean statistics for the customer overall?
>
> A:    Yes
>
> Q:    Not request-specific statistics?
>
> A:    Yes, ma'am
>
> Q:    Could you think of any way to come up with the costs of an individual request based on request specific statistics?
>
> A:    No.[13]
>
> Q:    Do you know which categories I'm talking about? Review, distribution, customer service, and IT allocated expenses, how does – generally speaking, how does Verisma determine how to allocate these costs?
>
> A:    Statistics by customer.

---

[13] Annette Fenwick Deposition, pages 33-35.

> Q:   Okay. What kinds of statistics?
>
> A:   Pages distributed, transactions entered.
>
> Q:   Anything else?
>
> A:   No[14]
>
> Q:   Oh, okay. So, they're part of the ordinary – in the order course of business Verisma allocates these costs?
>
> A:   Yes[15]

19.   In the ordinary course of business, Verisma's accounting department does not provide its customers with details about the revenue that Verisma generates from its customers' record requests.[16] Likewise, Verisma does not provide requesters with any information about the costs Verisma incurs to process or fulfill their requests.[17] According to Annette Fenwick, Verisma simply identifies costs attributable to a particular customer so that Verisma can determine the Company's profitability by customer.[18]

### *Analysis of Defendants Overcharging Plaintiffs and Putative Class Members for Copies of their Medical Records in Excess of the Actual Costs Incurred in Violation of New York Public Health Law § 18*

20.   I have prepared a preliminary analysis to determine whether, and the extent to which, Defendants overcharged the Plaintiffs and Putative Class Members for copies of their medical records. My analysis was developed using the same financial and statistical information used by Verisma in the ordinary course of business (which was produced by Verisma during discovery and discussed in the deposition testimony of Annette Fenwick, Verisma's Controller).

---

[14] Annette Fenwick Deposition, page 74.
[15] Annette Fenwick Deposition, page 75.
[16] Annette Fenwick Deposition, page 24.
[17] Annette Fenwick Deposition, page 36.
[18] Fenwick Deposition, pages 52-53. According to Annette Fenwick, Verisma (through its consultant David Dart) only began tracking profitability by customer in 2016.

21. Because Verisma ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, I used Verisma's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and standard cost accounting methods to identify, quantify and allocate costs incurred by Verisma to specific customers. I then used ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to calculate the average cost per page processed. Below I have outlined the specific steps and methods followed in developing my preliminary analysis of the amounts that Defendants overcharged the Plaintiffs and Putative class members for copies of their medical records in excess of the actual costs incurred:

    a. During discovery, Verisma produced ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that detailed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[19] See, e.g., **Exhibit E**.

    b. Verisma also produced ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that identify ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (for the periods January 2012 through December 2015[20]), including the portion of these ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. See, e.g., **Exhibits B and C**.

    c. Verisma has also provided financial records that detail ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. See, e.g., **Exhibit D**.

---

[19] 2012 [VERISMA111532-111555], 2013 [VERISMA111582-111605], 2014 [VERISMA111439-111459], and 2015 [VERISMA111491-111502].

[20] 2012 [VERISMA111504-111516], 2013 [VERISMA111556-111564], 2014 [VERISMA111411-111420], and 2015 [VERISMA111462-111470] and Fenwick Deposition, pages 32-33.

d.      To analyze whether, and the extent to which, the Defendants overcharged the Plaintiffs and Putative class members for copies of their medical records in excess of the actual costs incurred, I used the aforementioned ████████████████████ to determine the average cost per page that Verisma incurs to produce URMC records for requestors. Because Verisma does not individually track the specific costs per page it incurs to produce each customer's request, I used standard cost accounting procedures to calculate the average cost per page.[21]

e.      Using the ████████████████████████████████████████████████████████████████████████████████████████████████████████ I understand that these page count figures represent the total number of pages released in the corresponding billable and courtesy categories for each customer.[22]  Based on standard cost accounting practice, and consistent with the deposition testimony of Annette Fenwick, I used both billable and courtesy pages to determine the total cost per page processed, as there is no measurable difference in the effort required to fulfill these requests:

> *Q:      Okay.  Does Verisma separately track costs for billable pages compared to courtesy pages?*
>
> *A:      No.*
>
> *Q:      Does -- for accounting purposes, does courtesy and nonbillable mean pretty much the same thing?*
>
> *A:      Yes*
>
> *Q:      Would you agree there's no difference in the costs per page incurred by Verisma to process a billable request as compared to a courtesy request?*

---

[21] Fenwick Deposition, pages 33 and 35-36.
[22] Fenwick Deposition, page 90.

> *A:*     *Yes.*
>
> *Q:*     *You would agree?*
>
> *A:*     *Yes. No, wait a minute. I have to think about that. No, no difference.*[23]

    f.    Using only the direct costs attributable to URMC, I calculated the direct cost per page incurred by Verisma to process record requests on behalf of URMC during each year from 2012 through 2015. Based on this preliminary analysis, I conclude that the direct costs per page incurred by Verisma to fulfill URMC record requests was substantially below $0.75 per page.

    g.    During the period years 2012 through 2015, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. The tables below summarize the billable and courtesy pages processed by Verisma on behalf of URMC and for all Verisma customers on a yearly basis from 2012 through 2015:

[tables redacted]

    h.    The table below summarizes Verisma's direct cost per page for requests associated with URMC, calculated on a yearly basis from 2012 through 2015:

---

[23] Fenwick Deposition, pages 35-36.

[REDACTED]

i. I have similarly analyzed the total cost per page, using both (1) the costs directly attributable to URMC and (2) the indirect costs Verisma [REDACTED], consistent with the ordinary course of business cost reporting practices followed by the company. Based on this preliminary analysis, I conclude that the total direct and allocated indirect cost per page incurred by Verisma to fulfill URMC record requests was substantially below $0.75 per page.

j. The table below summarizes Verisma's total direct and allocated indirect cost per page for requests associated with URMC, calculated on a yearly basis from 2012 through 2015:

[REDACTED]

22. In addition to the [REDACTED] discussed above, Verisma incurs additional expenses in the ordinary course of business that are not directly attributable to specific customers, nor [REDACTED]. Because Verisma [REDACTED] I also have not allocated these costs. However, in the event that these [REDACTED] indirect costs were included in my cost analysis, the total costs would still be far below $0.75 per page.

### *Ability to Readily Determine Class-wide Damages from Defendants' Records and Other Class-wide Evidence*

23. At Plaintiffs' request, I have performed a preliminary analysis of the Defendants' records and other class-wide evidence to determine:

   a. How individual and class-wide damages can be accurately and objectively ascertained;

   b. Whether the damages analysis can be easily and objectively duplicated for all putative New York class members, and for periods beyond the 2011 through 2016 timeframe for which documents have been produced;

   c. Whether Plaintiff and the Court can accurately and objectively ascertain, and identify without individual inquiry, those individual putative class members, if any, that were unharmed or who benefitted from Defendants' alleged practices, and who therefore must be excluded from the certified class;

   d. Whether the named Plaintiffs in this matter (Ann McCracken, Joan Farrell, Sarah Stilson, Kevin McCloskey, Christopher Trapatsos, and Kimberly Bailey) experienced damages, both individually and collectively, and therefore - from a damages perspective - would be adequate representatives of the proposed class.

24. Based on these objectives, I developed a preliminary analysis of the individual class members' and overall class-wide damages experienced by Plaintiffs and putative class members using documents produced by Verisma and URMC.

25. Through discovery, Verisma provided a spreadsheet titled "█████████ █████████████████████████" which I understand includes █████████ █████████████████████████████████████ See **Exhibit F1** (excerpt). The spreadsheet includes █████████████████████

15

████ [24] ████████████████████████████████

████████████████████████     ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████   See **Exhibit F2** (excerpt).

26.     Based on my analysis, it appears that for all record releases reported by Verisma as ████████████████████████████████████████████. For example, the ████████████████████████████████ (associated with Plaintiff Ann McCracken, who requested her records through Faraci Lange) is identified as a ████████████████ ████████████████████████

27.     I likewise have determined that Verisma ████████████████████████ ████████████████████████████████

28.     Based on the invoice information provided and my preliminary analysis of the cost per page that Verisma incurred to process a record release (discussed above), I developed a damages model to determine the amount of damages experienced by each putative class member. I believe that this damages model will accurately calculate – within a reasonable degree of professional and accounting certainty – the amount of damages experienced by each putative class member as a result of Verisma's alleged failure to comply with New York Public Health Law § 18.

---

[24] The spreadsheet indicates that Verisma ████████████████████████████ ████████████████████████ ████████████████████████████████████████████ ████████████████████████████████

29. Based upon my analysis of the invoice data and cost information for URMC record releases, I believe that the damages experienced by each plaintiff and putative class member can be readily calculated by first identifying the release invoices that were paid for which the fee schedule was labeled "NY Fee Schedule PHL 18." For these invoices, I can calculate the amount of damages by (1) subtracting the actual cost per page incurred by Verisma from the amount charged by Verisma of ▮▮▮ per page,[26] and (2) multiplying this result by the number of pages billed in each invoice. The resulting dollar value constitutes the damages associated with each Plaintiff or putative class member invoice.

30. In my opinion, based upon my analysis and using the information provided to date, the aforementioned analysis provides a simple, accurate and objective method by which both individual class members' and overall class-wide damages can be calculated to a reasonable degree of professional and accounting certainty. Using documents produced in discovery, I have completed a preliminary analysis of both individual class members' and overall class-wide damages on the ▮▮▮▮▮▮▮▮▮▮ invoices produced for the period from May 14, 2011 through June 8, 2016. I believe that such an analysis can be easily and objectively duplicated for all putative class members and sub-class members.

31. The damages calculation method described above would also permit the Plaintiffs and the Court to easily, accurately and objectively ascertain, and identify without individual inquiry, those individual putative class members, if any, that were unharmed or who benefitted from Defendants' alleged practices. Based on my preliminary analysis, these putative class members can be, and have been, excluded from my calculation of individual and class-wide damages.

---

[26] Per spreadsheet, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

32.     Based on my preliminary analysis, I have also determined that the named Plaintiffs in this matter (Ann McCracken, Joan Farrell, Sarah Stilson, Kevin McCloskey, Christopher Trapatsos, and Kimberly Bailey) experienced damages, both individually and collectively, as a result of Verisma charging these individuals record release fees in excess of the actual costs incurred by Verisma in violation of New York Public Health Law § 18. As a result, I believe that from a damages perspective, the named Plaintiffs would be adequate representatives of the proposed class.

### *Summary Conclusions*

33.     In my opinion, based upon my analysis, using the information provided to date, and as stated to a reasonable degree of professional and accounting certainty:

a.     In the ordinary course of business, Verisma does not individually track the specific costs incurred to produce each requester's medical records.

b.     In the ordinary course of business, Verisma determines the costs it incurs by customer by ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

c.     Using only the direct costs attributable to URMC, the direct costs per page incurred by Verisma to process record requests on behalf of URMC during each year from 2012 through 2015 were substantially below ███ per page.

d.     Alternatively, using both (1) the costs directly attributable to URMC and (2) the indirect costs Verisma allocated to URMC from Verisma's ████████████████████ ███████████████████████████ the total direct and allocated indirect costs per page incurred

by Verisma to fulfill URMC record requests during each year from 2012 through 2015 were substantially below ■■■■ per page.

  e. My preliminary analysis of damages provides a simple, accurate and objective method by which both individual class members' and overall class-wide damages can be determined.

  f. My preliminary analysis of damages can be easily, accurately and objectively duplicated for all putative class members and sub-class members.

  g. My preliminary analysis of damages calculation can be used to easily, accurately and objectively ascertain, and identify without individual inquiry, those individual putative class members, if any, that were unharmed or who benefitted from Defendants' alleged practices, so that these putative class members can be excluded from the class and sub-classes.

  h. The named Plaintiffs in this matter (Ann McCracken, Joan Farrell, Sarah Stilson, Kevin McCloskey, Christopher Trapatsos, and Kimberly Bailey) experienced damages, both individually and collectively, as a result of Verisma charging these individuals record release fees in excess of the actual costs incurred by Verisma in violation of New York Public Health Law § 18, and therefore, from a damages perspective, would be adequate representatives of the proposed class.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 31, 2016, in Pittsburgh, Pennsylvania

_____
William G. Krieger