UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ANN McCRACKEN; JOAN FARRELL;
SARAH STILSON; KEVIN McCLOSKEY;
CHRISTOPHER TRAPATSOS; and
KIMBERLY BAILEY, as individuals
and as representatives of the classes,

          Plaintiffs,

  vs.

VERISMA SYSTEMS, INC.;
UNIVERSITY OF ROCHESTER;
STRONG MEMORIAL HOSPITAL; and
HIGHLAND HOSPITAL,

          Defendants.

Case No.: 6:14-cv-06248-MAT-JWF

---

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR CLASS CERTIFICATION**

## INTRODUCTION

The question at the heart of the claims in this case is whether Defendants overcharged for copies of medical records. As explained in Plaintiffs' opening brief, the issues surrounding actual costs are class-wide issues that will drive the resolution of this action. Defendants do not argue that calculating actual costs requires an individualized inquiry.[1] Instead, Defendants assert that secondary questions regarding the relationship between hospital patients and the persons making requests on their behalf somehow predominate over the central issues or render the class unascertainable. These arguments were rejected by the court in *Ruzhinskaya*, and Defendants' other arguments are also contrary to *Ruzhinskaya* and this Court's order denying Defendants' motion to dismiss. Accordingly, Plaintiffs' motion for class certification should be granted.[2]

## ARGUMENT

### I.  Verisma Misstates the Legal Standard Regarding Predominance

As an initial matter, Verisma misstates the predominance standard. *Verisma Memo at 18*. "Rule 23(b)(3) ... does *not* require a plaintiff seeking class certification to prove that each element of [the] claim is susceptible to classwide proof." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013).[3] This torpedoes Verisma's predominance argument, as the class-wide issue of whether Defendants charged in excess of actual costs clearly predominates and by itself is sufficient for this Court to certify the proposed class.

---

[1] Verisma's response to Plaintiffs' expert declaration merely serves to illustrate the class-wide issues that predominate this case. Even taking into account additional categories of costs, costs can still be calculated on a class-wide basis, and they still fall well below the overcharged rate. *See Reply Declaration of William G. Krieger, ¶¶ 11-17*.

[2] Plaintiffs will separately address the other issues raised by Verisma in its omnibus 30-page brief in their forthcoming response to Verisma's motion for summary judgment. *See ECF No. 87*.

[3] *See also Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (When "**one** or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately....") (emphasis added) (citations omitted); *Ruzhinskaya v. Healthport Techs., LLC*, 311 F.R.D. 87, 102 (S.D.N.Y. 2015) ("*Ruzhinskaya I*").

1

## II. Defendants' Challenges to Predominance and Ascertainability Fail

Defendants raise similar arguments as to predominance and ascertainability. *See Verisma Memo at 23* ("The problems with predominance … bleed into ascertainability…."); *URMC Memo at 7-13* (raising similar issues exclusively as to "ascertainability"). Namely, Defendants argue that a class cannot be certified because there are purportedly individualized issues regarding (1) whether class members suffered damages;[4] and (2) whether class members are "qualified persons" for purposes of NYPHL § 18. Each of these arguments fail.

### A. The Issue of Whether Class Members Suffered "Damages" Does Not Defeat Class Certification

Defendants' first argument rests on their contention that some of the class members may not have paid (or may not be obligated to pay) the charges at issue. This argument was expressly rejected by the court in *Ruzhinskaya* as a basis for opposing class certification:

> HealthPort argues that individualized inquiries will be required to determine class membership. That is because, for some records requests, it may not be immediately clear whether the patient, or a law firm bringing or exploring a case on her behalf, ultimately bore HealthPort's charge.… Therefore, HealthPort argues, determining class membership would require individualized inquiries into attorney retention agreements, and perhaps into the terms under which lawsuits were settled and costs reimbursed.
> \* \* \*
> The Court holds otherwise. As Ruzhinskaya points out, the attorneys who made requests for records, to the extent members of the class, did so as agents for clients—the class as defined would not include, for example, a patient's opposing counsel.... As for the distribution of the proceeds of any judgment here as between attorneys and clients, it is reasonable to expect an attorney to abide by a fiduciary and/or contractual duty to return to the client money the client paid but which has been recouped.

*Ruzhinskaya I*, 311 F.R.D. at 101; *see also Ruzhinskaya v. Healthport Techs., LLC*, 2015 WL 9255562, at \*1 (S.D.N.Y. Dec. 17, 2015) ("*Ruzhinskaya II*") (rejecting argument that class certification should be denied simply because it was unclear "whether patient [sic] or attorneys

---

[4] URMC characterizes this as a "standing" issue.

2

were ultimately responsible for payment"). This Court should reach the same result.

Here, as in *Ruzhinskaya*, the proposed class is limited to patients who requested copies of their medical records "either by themselves or through a qualified person." Therefore, contrary to Verisma's arguments (*see Verisma Memo at 19*), "the class as defined would not include, for example, a patient's opposing counsel" or an insurance company. *See Ruzhinskaya I*, 311 F.R.D. at 101.[5] Likewise, the proposed class is limited to persons who were charged $0.75 per page "in accordance with Verisma's 'NY Fee Schedule PHL 18,'" so Verisma has no basis for opposing class certification on the ground that indigent requestors were provided "copies of medical records without charge." *See Verisma Memo at 20.* The third possibility raised by Verisma, *i.e.*, that a patient or his or her counsel may have been "reimbursed by [an] opposing party" to an underlying personal injury lawsuit (*see Verisma Memo at 20*), also fails to defeat class certification for the reasons explained in *Ruzhinskaya I*, 311 F.R.D. at 110.[6] Finally, Verisma's three remaining scenarios (*see Verisma Memo at 19-22*) all deal with the "distribution of the proceeds of any judgment … as between attorneys and clients" where an attorney made a request on behalf of a patient. *See Ruzhinskaya I*, 311 F.R.D. at 101. In that scenario, the overcharges can be refunded to the attorney as the patient's agent, and the attorney will have a legal and

---

[5] To the extent that Defendants argue it is impossible to ascertain who is a "qualified person," that argument is addressed below. *See infra* at 5-7.

[6] As the court stated in its opinion:

> HealthPort objects that the proposed class does not exclude those who were overcharged by HealthPort, but who were subsequently reimbursed by opposing counsel for these costs, for example, as part of the settlement of a lawsuit. For two reasons, the Court disagrees that that such class members could not reclaim, and that HealthPort could retain, the overcharge found. First, the absorption by an adversary of a plaintiff's costs as part of the resolution of a lawsuit cannot be viewed in isolation. The payment of such costs may have effectively been in exchange for remediation of comparable value. Second, the claims process is capable of assuring that a class member whose costs were later covered by a third party notifies that third party, so as to enable any claim among them to be resolved.

*Id.*

ethical obligation to handle the accounting appropriately from there (*i.e.,* the attorney will pass the refund on to the patient if the patient paid the charge, or alternatively, may retain the payment if the attorney absorbed the charge on the client's behalf). *See* N.Y. R. Prof. Conduct 1.15(a). "The Court explicitly addressed this issue in [*Ruzhinskaya I*], holding that 'it is reasonable to expect an attorney to abide by a fiduciary and/or contractual duty to return to the client money the client paid but which has been recouped.'" *Ruzhinskaya II*, 2015 WL 9255562, at *1 (quoting *Ruzhinskaya I*, 311 F.R.D. at 101). In the event that the Court believes that added safeguards are necessary, "[a] well-designed claims process can further assure that any attorney claimant has notified the client of a recovery in this case and/or has certified the appropriate person to receive it." *Ruzhinskaya I*, 311 F.R.D. at 101. The allocation issue raised by Defendants is not a basis for denying class certification, effectively eliminating the opportunity for any recovery at all.[7] That would only serve to benefit Defendants.

Although Verisma argues that a claims process would deprive it of due process rights (*Verisma Memo at 23*), this argument was rejected in *Ruzhinskaya*. As summarized by the court:

> HealthPort argues that "if this were an individual action, HealthPort would be able to assert as a defense that the individual was not injured because he/she never paid HealthPort, received full or partial reimbursement, or had no obligation to pay HealthPort." HealthPort suggests that certification of the proposed class will destroy its ability to mount such defenses. That too is wrong. These arguments do not go to the ultimate issue of whether there was an overcharge. And HealthPort is at liberty to participate in the design of the claims process to guard against the fraudulent claims that it imagines.

*Ruzhinskaya II*, 2015 WL 9255562, at *2 (internal citation omitted).

Finally, although URMC quibbles with Plaintiffs' class definition on the ground that it does not include attorneys (*URMC Memo at 11*), the Second Circuit previously addressed this purported "standing" issue in *Carter v. HealthPort Techs., Inc.*, 822 F.3d 47 (2d Cir. 2016). In

---

[7] As noted below, individual suits are not feasible in light of the amount of money at stake and the costs of bringing suit, and would not be efficient even if they were feasible. *See infra* at 9.

that case, the district court held that patients who alleged that they paid charges for medical records "through [their] counsel" had not adequately pleaded standing to sue for violations of NYPHL § 18 and NYGBL § 349, and for unjust enrichment. *Id.* at 51. The Second Circuit reversed, holding that these allegations were sufficient to support standing "given ordinary principles of agency" and given that "[t]he relationship between a lawyer and client is one of agent and principal." *Id.* at 58; *accord Pratt v. Smart Corp.*, 968 S.W.2d 868, 873 (Tenn. Ct. App. 1997) ("[T]he fact that it was Pratt's attorney, rather than Pratt herself, who received the records and paid the invoice presents no obstacle to Pratt's claim, since her attorney clearly acted on her behalf in obtaining the records."). Thus, it is not necessary to include attorneys in the class definition for purposes of standing.[8] However, even if it were necessary to include attorneys in the class definition (the only conceivable purpose of which would be to address situations where an attorney may have absorbed the charges without expectation of repayment), the court is free to make whatever tweaks to the class definition it deems necessary. *See Ruzhinskaya I*, 311 F.R.D. at 108 ("The court has authority *sua sponte* to modify a proposed class definition.").[9]

### B. The Issue of Whether Class Members Are "Qualified Persons" Does Not Defeat Class Certification

The other principal argument raised by Defendants is that it allegedly is not ascertainable

---

[8] This Court previously determined that Plaintiffs have standing to pursue their class claims. *See ECF No. 45 at 3-4*. It is not necessary to separately present evidence of standing for each individual class member. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) ("We do not require that each member of a class submit evidence of personal standing.").

[9] For example, the Court could modify the proposed class definition here to closely track the certified class definition in *Ruzhinskaya* as follows:

> All persons, who at any time from May 14, 2011 to the present, paid for, or are obligated to pay for, copies of medical records requested from a University of Rochester health care facility by a "qualified person" as defined in New York Public Health Law § 18, for which copies Verisma Systems, Inc. charged $0.75 per page in accordance with its "NY Fee Schedule PHL 18," excluding any principals or employees of Defendants, of Defendants' counsel, or of Class Counsel.

As in *Ruzhinskaya*, where there was a single named plaintiff, an attorney does not need to be included as a named plaintiff for attorney members of the class to be adequately represented.

5

whether particular persons (other than patients) are "qualified persons" for purposes of the statute. This argument fails for multiple reasons. **First**, the term "qualified person" is expressly incorporated into the class definition that was adopted in *Ruzhinskaya*, and the court did not find that term to be problematic for purposes of ascertainability or predominance.[10] **Second**, Verisma classifies requests and keeps a record of which requests fall under "NY Fee Schedule PHL 18." *See Pls' Memo at 5.* To the extent that this classification is sufficiently reliable for its own business purposes, it is sufficiently reliable for litigation purposes. **Third**, although Defendants have identified certain requests classified under "NY Fee Schedule PHL 18" that they believe were not submitted by "qualified persons," *see Verisma Memo at 24-26; URMC Memo at 12-13*, this merely serves to confirm that Defendants are able to ascertain who is (or is not) a "qualified person" with reasonable diligence based on existing information, and any instances where a particular request was misclassified can be addressed accordingly.[11] **Finally**, to the extent that it is necessary to confirm whether a particular request was submitted by a "qualified person," this can be dealt with through an "ably designed claims process." *Ruzhinskaya II*, 2015 WL 9255562, at *1. Courts frequently certify consumer classes even in cases where consumers would need to utilize affidavits or claim forms to identify members of the class. *See, e.g.*, *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 2016 WL 5817012, at *17–18 (S.D.N.Y. Oct. 4, 2016); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 567 (S.D.N.Y. 2014).[12] Under these

---

[10] To the contrary, the court held that "the class definition **must** be limited to requests by 'qualified persons.'" *Ruzhinskaya I*, 311 F.R.D. at 109 (emphasis added).

[11] Verisma's records include the name of the patient, an indication of whether the medical records were paid for, the amount paid, copies of the requests and authorizations, the name and address of the person billed, requestor type, and request type. *See Krieger Decl., Ex. F1 (ECF No. 75-7); McManus Dep. (ECF No. 73-2) at 106:11-13, 114:19-20; Verisma 30(b)(6) Dep. 87:20-88:2 (attached as Ex. 1 to Second Frisch Declaration).*

[12] URMC cites several cases from this circuit where courts held claim forms were insufficient. *URMC Memo at 9.* Those cases are distinguishable, *see Ruzhinskaya I*, 311 F.R.D. at 101, in that class members' identities were not preserved in any records, class members were unlikely to have accurately remembered their purchases, and the primary means of identifying class

circumstances, it can hardly be said that individualized issues regarding whether a request qualifies for treatment under NYPHL § 18 predominate over the class-wide issues.[13]

### III. Defendants' Challenges to Typicality and Adequacy Fail

Defendants' challenges to typicality and adequacy also fail. URMC argues that Plaintiffs are atypical because their counsel Faraci Lange, LLP ("Faraci"), submitted letters to Verisma stating that Faraci would "promptly reimburse [Verisma] for any copying expense not exceeding 75 cents per page." *URMC Memo at 14*. However, the quoted language is not an agreement to pay $0.75 per page. In fact, the term "any copying *expense*" denotes the actual costs incurred in making copies. Regardless, there is no evidence that this sentence renders Plaintiffs atypical; to the contrary, "[i]t is likely that most, if not all, members of the putative class agreed to and did pay [Defendants'] per-page charge, without stating that they were doing so under protest." *Ruzhinskaya I*, 311 F.R.D. at 99.

Verisma similarly argues that Faraci is inadequate to serve as class counsel because Faraci purportedly "waived" the claims of class members by continuing to pay $0.75 per page for medical records after the commencement of this action. *Verisma Memo at 28*. This argument also should be rejected. The voluntary payment doctrine "is inapplicable where the payment is

---

members was self-reporting. *See In re Avon Anti-Aging Skincare Creams & Prod. Mktg. & Sales Practices Litig.*, 2015 WL 5730022, at *5 (S.D.N.Y. Sept. 30, 2015); *Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452, at *13 (S.D.N.Y. Aug. 5, 2010). Here, by contrast, Verisma's records are sufficient to compile a reasonably accurate class list without the need for self-reporting, and retainer agreements and reimbursement records are almost certainly available for verification purposes, as attorneys keep such records in the ordinary course of business.

[13] Although there are more than 38,000 requests billed under the NYPHL § 18 fee schedule, the overcharges were only invoiced to about 4,320 unique people or organizations. *Second Frisch Decl. ¶ 5*. Of those, 2,065 are denoted as patients or their parent or legal guardian – who are clearly qualified persons under NYPHL § 18(1)(g). *Id.* That leaves only 2,255 invoiced people or organizations who were *not* the patient or their legal guardian. And for most of those, it will be obvious on the face of the request or from documents submitted with the request whether it came from a "qualified person" (such as a personal injury firm or a representative submitting a power of attorney or a cover letter on behalf of the patient) or a non-qualified person (such as a defense firm, a law firm requesting records via a subpoena instead of a HIPPA authorization, or an insurance company). Asking any remaining to identify their relationship to the patient via a claim form is perfectly feasible. It certainly would not require "mini-trials."

made under an appropriate protest or the circumstances attending the payment demonstrate the payor's intention to preserve the right to dispute the legality of the [charge]." *Jenoure v. Body Sols. Plus, LLC of Westbury*, 912 N.Y.S.2d 370, 371 (App. Term 2010). Surely this ongoing class action by Plaintiffs' counsel constitutes a "protest" that demonstrates an intention to preserve the right to dispute the legality of the charges. Moreover, the voluntary payment doctrine is inapplicable where there is no realistic alternative to paying the fee. *Id.* at 371-72. Here, Verisma's policy was to withhold the records until the invoice was paid. *See Frisch Decl., Ex. 31 (ECF No. 73-32) at 1; 30(b)(6) Dep. 25:23-26:1*. Thus, Plaintiffs "had no other practical means of obtaining [their] medical records." *See Ruzhinskaya I*, 311 F.R.D. at 99.

## IV. Verisma's Additional Arguments Regarding the NYGBL and Unjust Enrichment Claims Are Meritless

Verisma raises additional class certification issues with respect to Plaintiffs' NYGBL and unjust enrichment claims. However, each of these arguments also fails.

For example, Verisma argues that Plaintiffs are inadequate to represent the class in connection with their NYGBL claim because their medical records requests allegedly did not constitute "consumer-oriented" conduct. *Verisma Memo at 27* (citing, *inter alia*, *Slobin v. Henry Ford Health Care*, 666 N.W.2d 632, 634 (Mich. 2003)). However, this Court previously disposed of this issue in connection with Verisma's motion to dismiss, and held:

> Plaintiffs did not bring these personal injury lawsuits as part of a commercial dispute; rather, through these lawsuits, Plaintiffs sought to restore themselves, personally, to their respective pre-injury statuses. *See Slobin*, 666 N.W.2d at 636 (dissenting opn.). As the District of Columbia Court of Appeals in *Ford* noted, "[u]sing medical records to secure compensation for injuries in a lawsuit is no less 'personal' than is using them to secure insurance coverage or, for that matter, a second medical opinion, employment, medical leave, and other personal benefits. A motive may be pecuniary and still be personal." *Ford*, 908 A.2d at 83. The Court accordingly finds that Plaintiffs have pleaded conduct that is consumer-oriented for purposes of their GBL § 349 claim.

*ECF No. 45 at 15*.

Verisma further argues that a class action would not be "superior" because the statutory damages and discretionary fee-shifting provisions of NYGBL § 349(h) provide sufficient incentive to bring individual claims. *See Verisma Memo at 26.* This is absurd. The possibility of a modest statutory penalty[14] and discretionary fee-shifting does not provide class members sufficient incentive to prosecute individual cases that are worth only a few hundred dollars and would require tens of thousands of dollars in expert costs. *See Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co.*, 2012 WL 10242276, at *13 (D. Conn. Sept. 27, 2012) (the existence of discretionary fee-shifting "does not compel the conclusion that a class is not superior"). Verisma does not point to a single individual lawsuit filed against it in New York asserting similar claims.

Verisma also argues that Plaintiffs' unjust enrichment claim is not amenable to class certification. *Verisma Memo at 29-30* (citing *Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62 (S.D.N.Y. 2013)). However, this argument was rejected in *Ruzhinskaya*. *See Ruzhinskaya II*, 2015 WL 9255562, at *2 ("HealthPort argues that Ruzhinskaya's unjust enrichment claim cannot be proven by classwide evidence. That too is wrong. Unlike in *Vaccariello*…, the relevant issue here is simply whether [Defendants'] charged fee was excessive.").[15]

Finally, Verisma argues that Plaintiffs have not shown that the elements of their NYGBL and unjust enrichment claims can be established by class-wide proof. *See Verisma Memo at 18.*[16]

---

[14] NYGBL § 349(h) provides for a $50 statutory penalty, and in cases of willful misconduct, treble damages up to $1,000.

[15] To the extent that Verisma argues this claim is "duplicative," that is hardly a basis for denying class certification. Verisma's argument that Plaintiff's unjust enrichment claim duplicates other causes of action will be addressed in Plaintiffs' forthcoming response to Verisma's motion for partial summary judgment. At this time, it is sufficient to note that the claim is plainly not duplicative because the remedy is disgorgement, not damages.

[16] "To make out a prima facie case under [NYGBL §] 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *ECF No. 45 at 12* (citing *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)). To state such a claim for unjust enrichment, "a plaintiff must establish (1) that the defendant benefitted; (2) at plaintiff's expense; and (3) that 'equity and good conscience require restitution.'" *Id.* at 22 (citing *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)).

However, both claims also will center on the calculation of actual costs – indisputably a class-wide question. To the extent that Verisma's actual costs were less than $0.75 per page, it was materially misleading (in violation of NYGBL § 349) for Verisma to issue inflated invoices that failed to disclose this. *See ECF No. 45 at 16-17* (citing *In re Coordinated Title Ins. Cases*, 2004 WL 690380 (Sup. Ct. 2004) (granting motion for class certification of NYGBL § 349(a) claim where the "question raised in the complaint involve[d] the conduct of the defendants in allegedly overcharging or failing to notify the members of the putative class of the availability of the mandated discounts")).[17] Similarly, the question of whether "equity and good conscience require restitution" depends on whether Verisma charged in excess of its actual costs. Verisma does not point to anything about these claims that render them unsuitable for class treatment. Notably, the plaintiffs in *Ruzhinskaya* also asserted claims for violation of NYGBL § 349 and for unjust enrichment, and the court did not find that these claims were unsuitable to class treatment.

## CONCLUSION

For the above reasons, the Court should certify the proposed class and direct the parties to jointly prepare a proposed class notice.[18] Plaintiffs agree with URMC that subclasses are unnecessary based on URMC's admission there is no distinction between class members who requested copies of their records from Highland and Strong.

---

[17] New York courts have adopted an objective, "reasonable consumer" definition of materially misleading. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995). Questions that can be resolved by reference to such an "objective standard" are "common to all members of the class." *Amgen,* 133 S. Ct. at 1191, 1195.

[18] Notice can be mailed to last-known addresses, and other forms of notice such as publication notice are also available. Although Mr. McManus states in his declaration that Verisma does not maintain records showing the patient's address, *McManus Decl. (ECF No. 84-9, ), ¶ 23 n.3*, that statement is demonstrably false, as the standard HIPAA authorization forms include a space for the patient to provide their address, *see id. at Ex. B (ECF No. 84-10)*; http://www.nycourts.gov/forms/hipaa_fillable.pdf. Plaintiff is not required to set forth a detailed notice plan before certification.

| | |
|---|---|
| Dated: December 21, 2016 | **NICHOLS KASTER, PLLP**<br><br>BY: */s/ Kai H. Richter*<br>Kai H. Richter, MN Bar No. 0296545<br>Eleanor E. Frisch, MN Bar No. 0397776<br>4600 IDS Center<br>80 South Eighth Street<br>Minneapolis, MN 55402-2242<br>Telephone: 612-256-3200<br>Facsimile: 612-338-4878<br>krichter@nka.com<br>efrisch@nka.com<br><br>**FARACI LANGE LLP**<br>Stephen G Schwarz, NY Bar No. 2008936<br>Kathryn Lee Bruns, NY Bar No. 2874063<br>28 E. Main Street, Suite 1100<br>Rochester, NY 14614<br>Telephone: (585) 325-5150<br>Fax: (585) 325-3285<br>sschwarz@faraci.com<br>kbruns@faraci.com<br><br>*ATTORNEYS FOR PLAINTIFFS AND THE PROPOSED CLASSES* |