UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————————

ANN McCRACKEN, JOAN FARRELL,
SARAH STILSON, KEVIN McCLOSKEY,
CHRISTOPHER TRAPATSOS, and
KIMBERLY BAILEY, as individuals
and as representatives of the
classes,

              Plaintiffs,

    -vs-

VERISMA SYSTEMS, INC., STRONG
MEMORIAL HOSPITAL, HIGHLAND
HOSPITAL, and UNIVERSITY OF
ROCHESTER,

              Defendants.

**DECISION AND ORDER**
**No. 6:14-cv-06248(MAT)**

———————————————————————————

## INTRODUCTION

This is a putative class action by Ann McCracken, Joan
Farrell, Sara Stilson, Kevin McCloskey, Christopher Trapatsos, and
Kimberly Bailey (collectively, "Plaintiffs") against Verisma
Systems, Inc. ("Verisma"), Highland Hospital ("HH"), Strong
Memorial Hospital ("SMH"), and the University of Rochester ("UR")[1]
based on these entities' systematic overcharging of patients who
requested copies of their medical records, in violation of New York
Public Health Law ("NYPHL") § 18.[2] Plaintiffs allege that Verisma

---

[1]

    HH, SMH, and UR are collectively referred to as the "Rochester Healthcare
Defendants." Verisma and the Rochester Healthcare Defendants are collectively
referred to as "Defendants."

[2]

    The statute provides in relevant part that "[t]he provider may impose a
reasonable charge for all inspections and copies, not exceeding the costs

and the Rochester Healthcare Defendants ignored the restriction in the statute that limits the amount that may be charged to "a reasonable charge . . . not exceeding the costs incurred," and not to exceed $0.75 per page, to produce the records. Instead, Plaintiffs allege, Verisma and the Rochester Healthcare Defendants imposed an across-the-board, uniform charge of $0.75 per page for all copies of medical records, even those produced electronically, in excess of their actual costs and in violation of NYPHL § 18. Additional facts will be set forth _infra_ as necessary to the Court's resolution of Verisma's summary judgment motion.

## THE PENDING MOTIONS

Before the Court are various motions. Plaintiffs have filed a Motion to Seal Documents (Dkt #70-1 through 70-14), and a Motion to Certify Class (Dkt #71), along with a supporting Memorandum of Law (Dkt #72) and supporting Declarations (Dkt #73 through #82). In response, Verisma filed a combined Motion for Partial Summary Judgment and Response in Opposition to the Motion to Certify Class (Dkt #84-1 through #84-15). The "Rochester Healthcare Defendants") filed a Response in Opposition to the Motion to Certify Class (Dkt #85-1 through #85-3). Plaintiffs filed a Reply (Dkt #88) in further support of their Motion to Certify Class. Plaintiffs also filed a Statement of Facts in Opposition to Verisma's Motion for Summary

incurred by such provider. . . . However, the reasonable charge for paper copies shall not exceed seventy-five cents per page." N.Y. PUBLIC HEALTH L. § 18(2)(e).

Judgment (Dkt #90, replaced by Dkt #94), a Memorandum of Law in Opposition (Dkt #91, replaced by Dkt #95), and a supporting Declaration (Dkt #92). The Rochester Healthcare Defendants filed a Response in Opposition. Verisma filed a Reply (Dkt #97) in further support of its Motion for Summary Judgment.

For the reasons discussed below, Verisma's Motion for Summary Judgment is denied. The Court will rule on Plaintiffs' Motion for Class Certification and Motion to Seal Documents in separate Decisions and Orders.

## DISCUSSION

### I. This Court is Not Required to Decline Jurisdiction

In 2005, Congress passed the Class Action Fairness Act, Pub. L. No. 109-2, 119 Stat. 4 ("CAFA"). Verisma seeks summary judgment on the basis that CAFA mandates that this Court decline to exercise subject matter jurisdiction over this lawsuit.

#### A. CAFA

CAFA gives federal courts subject matter jurisdiction over "class actions" if the suit meets certain requirements, namely, that the "'matter in controversy exceeds the sum or value of $5,000,000,' the aggregate number of proposed class members is 100 or more, and any class member is a citizen of a state different from any defendant." Vodenichar v. Halcon Energy Properties, Inc., 733 F.3d 497, 503 (3d Cir. 2013) (citing 28 U.S.C. § 1332(d)(2), (d)(2)(A), (d)(5)(B)). Thus, CAFA affords federal courts

jurisdiction over class actions "even in the absence of complete diversity between the parties, except where the 'controversy is uniquely' connected to the state in which the action was originally filed." Id. (citation omitted). To further the goal of excluding cases with a "unique[ ]" connection to the forum state, CAFA contains two "mandatory exceptions[,]" id., to the exercise of federal subject matter jurisdiction over class actions—the "local controversy" exception, see 28 U.S.C. § 1332(d)(4)(A), and "home state" exception, see id. § 1332(d)(4)(B). "These exceptions are designed to draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to that state." Hart v. FedEx Ground Package System Inc., 457 F.3d 675, 681-82 (7th Cir. 2006) (citing Pub.L. 109-2, § 2, Feb. 18, 2005, 119 Stat. 4). The party seeking to invoke one of these exceptions "bears the burden of proving by a preponderance of the evidence that the exception applies." Vodenichar, 733 F.3d at 503 (citing Kaufman v. Allstate N.J. Ins. Co., 561 F.3d 144, 153-54 (3d Cir. 2009) (collecting circuit authority)).

**B. The Court Need Not Address the Timeliness of Verisma's Motion**

CAFA "imposes no time limit" on a motion under Section 1332(d). Hart, 457 F.3d at 682. Nevertheless, Plaintiffs argue that Verisma has waived its right to assert entitlement to an exception under CAFA because its motion was not filed within a "reasonable

-4-

time." Gold v. New York Life Ins. Co., 730 F.3d 137, 141 (2d Cir. 2013). In Gold, the Second Circuit agreed with the district court, as well as the Seventh and Eighth Circuits, that the "home state exception was not jurisdictional because the '"decline to exercise"' language '"inherently recognizes [that] the district court has subject matter jurisdiction"' but must actively decline to exercise it if the exception's requirements are met."'" Id. (quoting Gold v. New York Life Ins. Co., No. 09 Civ. 3210(WHP), 2012 WL 1674300, at *2 (S.D.N.Y. May 14, 2012) (quoting Graphic Communications v. CVS Caremark Corp., 636 F.3d 971, 973 (8th Cir. 2011); citing Morrison v. YTB Int'l, Inc., 649 F.3d 533, 536 (7th Cir. 2011)). The Second Circuit further agreed with the plaintiffs "that if the exception is not jurisdictional, it must be raised within a reasonable time," id., and if the defendant fails to do so, it "thereby waive[s] the exception." Gold, 730 F.3d at 141. The Second Circuit reviews a district court's determination as to whether a CAFA motion was brought within a reasonable time for abuse of discretion. Id. at 142 (citation omitted).

Both Plaintiffs and Verisma urge that Gold supports their respective positions. The Court has assumed arguendo that Verisma's motion asserting a CAFA defense was made within a reasonable time. As discussed further below, the Court finds that Verisma has not shouldered its burden of proving by a preponderance of the evidence that any of the mandatory CAFA exceptions apply.

**C. The "Home State" Exception Does Not Apply**

The home state exception provides that "[a] district court shall decline to exercise jurisdiction . . . over a class action in which . . . [1] two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the [2] primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). Plaintiff does not dispute that the first element of the home state exception is met, but argues that Verisma, which is a non-domiciliary of New York, is the "primary defendant." Therefore, the question for the Court to resolve is whether the "primary defendants" in this case are all New York citizens.

"Despite burgeoning CAFA jurisprudence, few courts have opined on the home-state controversy requirement with respect to the definition of 'primary defendants'." Anthony v. Small Tube Mfg. Corp., 535 F. Supp.2d 506, 515 (E.D. Pa. 2007) (quoting 28 U.S.C. § 1332(d)(4)(B)). The Second Circuit has not weighed in on this discussion. "However, as 'evident from the statute's use of the phrase "*the* primary defendants" rather than "*a* primary defendant", "the plain language of the statute requires remand only when all of the primary defendants are residents of the same state in which the action was originally filed."'" Id. (quoting Robinson v. Cheetah Transportation, Civ.A.No. 06-0005, 2006 WL 3322580, at *3 (W.D. La. Nov. 14, 2006) (emphases in original)).

Most courts have construed "primary defendants" by relying on a construction of an analogous provision of the Multiparty, Multiforum, Trial Jurisdiction Act of 2002, 28 U.S.C. § 1369[.]" Anthony, 535 F. Supp.2d at 515 (citing Passa v. Derderian, 308 F. Supp.2d 43, 61-64 (D. R.I. 2004)). The district court in Passa indicated that there is a settled judicial understanding of the term "primary defendants" borrowed from tort law. Passa, 308 F. Supp.2d at 62 ("In tort actions, . . . 'primary' defendants are most often defined as those parties that are allegedly directly liable to the plaintiffs, while 'secondary' defendants are usually those parties sued under theories of vicarious liability or joined for purposes of contribution or indemnification.") (citations omitted); see also, e.g., Kitson v. Bank of Edwardsville, Civ.A.No. 06-528, 2006 WL 3392752, at *13-17 (S.D. Ill. Nov. 22, 2006) (settled legal definitions are properly considered as part of congressional understanding). After reviewing applicable precedent, the Passa court discerned a "settled judicial understanding of 'primary defendants' as those parties having a dominant relation to the subject matter of the controversy, in contrast to other defendants who played a secondary role by merely assisting in the alleged wrongdoing, or who are only vicariously liable." Passa, 308 F. Supp.2d at 61-64; accord, e.g., Anthony, 535 F. Supp.2d at 515-16 (D .R.I. 2004). Significantly, these courts have "rejected a definition of primary defendants as those with the deepest pockets

or the greatest culpability. These definitions were determined to be unworkable because they would require a degree of fact-finding beyond which could be performed at the procedural juncture." Anthony v. Small Tube Mfg. Corp., 535 F. Supp. 2d 506, 516 (E.D. Pa. 2007) (citing Passa, 308 F. Supp.2d at 61 (rejecting "outright" the "contention" that "primary defendants" "should be defined as those defendants with the "'deepest pockets'" because "the measure of a particular defendant's ability to pay a judgment should have no bearing on [a] [c]ourt's evaluation of a Rule 12(b)(1) motion"); Kearns v. Ford Motor Co., Civ.A.No. 05-5644, 2005 WL 3967998, at *8 (C.D. Cal. Nov. 21, 2005)); footnote omitted).

The Court agrees with the approach followed by the district courts in Passa and Anthony, inter alia, and rejects Verisma's invitation to circumscribe the "home state" exception to require a determination that there is only one "primary defendant," and that this singular "primary defendant" is the one with the "deepest pockets." By its terms, the home-state exception refers to primary defendants in the plural, and Plaintiff's Complaint alleges direct liability against all of the named defendants, not just Verisma. Based on the pleadings and unrebutted evidence in the record thus far, the Court finds that Verisma is one of three "primary defendants" in this action because all three named defendants face direct liability. The unrebutted evidence also establishes that Verisma is a non-domiciliary of New York, which creates diversity

between the putative class and the primary defendants. <u>See</u>, <u>e.g.</u>, <u>Anthony</u>, 535 F. Supp.2d at 527-18 ("The home-state controversy exception refers to multiple 'primary defendants'. Plaintiff's complaint alleges direct liability against all four named defendants. Based on the pleadings and the unrebutted evidence submitted by the parties, I find that there are four 'primary defendants' in this action because all four named defendants face direct liability. The unrebutted evidence also establishes that two of the four primary defendants in this action are not citizens of Pennsylvania. Therefore, there is diversity between the putative class and the primary defendants.").

The Court finds that Verisma has not met its burden with regard to the second prong of the home state exception. Therefore, it has not shown that the home state exception to CAFA precludes this Court from assuming jurisdiction over Plaintiff's case.

**D.    The "Local Controversy" Exception Does Not Apply**

The local-controversy exception, <u>see</u> 28 U.S.C. § 1332(d)(4), is more intricate than the home-state exception[.]" <u>In re Sprint Nextel Corp.</u>, 593 F.3d 669, 672 (7th Cir. 2010). Section 1332(d)(4) provides in relevant part that a district court "shall decline" to exercise jurisdiction

(A)(i) over a class action in which—

(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

-9-

> (II) at least 1 defendant is a defendant—
>   (aa) from whom significant relief is sought by
>   members of the plaintiff class;
>   (bb) whose alleged conduct forms a significant
>   basis for the claims asserted by the proposed
>   plaintiff class; and
>   (cc) who is a citizen of the State in which
>   the action was originally filed; and
>
> (III) principal injuries resulting from the alleged
> conduct or any related conduct of each defendant
> were incurred in the State in which the action was
> originally filed; and
>
> (ii) during the 3-year period preceding the filing of
> that class action, no other class action has been filed
> asserting the same or similar factual allegations against
> any of the defendants on behalf of the same persons. . .
> .

28 U.S.C. § 1332(d)(4)(A). "The local controversy exception seeks to 'identify a truly local controversy—a controversy that uniquely affects a particular locality to the exclusion of all others[,]'" Vodenichar, 733 F.3d at 508 n. 11 (quoting 151 Cong. Rec. H723-01, 2005 WL 387992 (daily ed. Feb. 17, 2005) (statement of Rep. Sensenbrenner)), and 'enables State courts to adjudicate truly local disputes involving principal injuries concentrated within the forum State.'" Id. (quoting 151 Cong. Rec. S999-02, 2005 WL 283380 (daily ed. Feb. 7, 2005) (statement of Sen. Specter)).

Plaintiffs dispute only one element of the local controversy exception, namely, that "no other class action," 28 U.S.C. § 1332(d)(4)(A)(ii), has been filed within three years of the filing date of the instant action. Plaintiffs argue that there *is* an "other class action" filed within the relevant time-frame: Lagas

v. Verisma Systems, Inc., Cause No. 4:13-cv-01082-SWH, (W.D. Mo. Nov. 4, 2013), filed on August 28, 2013, in the Circuit Court of Jackson County, Missouri, Independence Division, Case No. 1316-CV21932, and removed to the Western District of Missouri on November 4, 2013. The proposed class in Lagas consisted of "[a]ll persons and businesses that paid a 'Certification Fee' to [Verisma] in connection with the furnishing of medical records in the State of Missouri from August 24, 2012[,] and April 30, 2014." Lagas v. Verisma Sys., Inc., 4:13-CV-01082-SWH, 2014 WL 12589322, at *1 (W.D. Mo. July 17, 2014).

While the Second Circuit has not addressed the meaning of the "no other class action" element in CAFA's local controversy exception, the Third Circuit's Vodenichar decision is instructive. By including the local controversy exception in CAFA, the Vodenichar panel stated, "Congress wanted to ensure that defendants did not face copycat, or near copycat, suits in multiple forums and hence excluded from the local controversy exception cases where a defendant was named in multiple similar cases." Id. The Third Circuit concluded that "[i]t follows that the 'no other class action' factor *must not be read too narrowly*." Id. (emphasis supplied). Thus, when examining the "no other class action" element, the "'inquiry is whether *similar factual allegations* have been made against the defendant in multiple class actions'—and hence they are facing separate, distinct lawsuits—without regard to

the procedural posture of the earlier filed cases or whether the putative classes in the cases overlap, their claims arise from an identical event, or involve the same causes of action or legal theories." <u>Vodenichar</u>, 733 F.3d at 508 (quoting S. Rep. No. 109-14, at 41, 2005 U.S. Code Cong. & Admin. News at 39; emphasis supplied)).

Verisma relies on <u>Rasberry v. Capitol County Mut. Fire. Ins. Co.</u>, 609 F. Supp.2d 594 (E.D. Tex. 2009), which declined to apply the local controversy exception, after finding that there was no previously filed other class action:

> [The earlier case] sought to recover money damages. Rasberry seeks only declaratory and injunctive relief. The principal objects of both suits are factually and analytically distinct even though both suits arise from a common event, Hurricane Rita, and share a common defendant, Capitol County. Most importantly, the factual basis giving rise to both actions differs dramatically. *The proof necessary to prevail in behalf of the class in [the earlier case] differs in all crucial respects from the proof necessary to prevail in behalf of the proposed class in this action*. These fundamental differences between Williams and the instant action compel a conclusion that during the 3-year period preceding the filing of this class action, no other class action has been filed asserting the same or similar factual allegations against Capitol County on behalf of the same or other persons.

<u>Rasberry</u>, 609 F. Supp.2d at 605-06 (emphasis supplied). Verisma focuses on the italicized sentence in the above-quoted excerpt and contends that the proof necessary for the plaintiffs in <u>Lagas</u> to prevail is different that the proof required for Plaintiffs to prevail here, which leads to the conclusion that it is not an

"other class action." Verisma focuses on differences between the Missouri statute at issue in Lagas, and PHL § 18. Here, the statute at issue, PHL § 18 differs from Mo. Rev. Stat. § 191.227 insofar as it is violated when a "provider" charges more than the "costs incurred" for the copying of a patient's records. See N.Y. Pub. Health L. § 18. In Lagas, on the other hand, proof of a violation of Mo. Rev. Stat. § 191.227 could be shown simply by comparing the costs charged and the statutorily-fixed amount. Stated another way, the proof of what was charged alone, and for what type of expense, would establish whether the amount charged varied from the amounts fixed by the Missouri statute; here, the parties will have to present expert testimony to establish whether the "costs incurred" for copying records were less than the amount Verisma charged patients for copies of their records, thereby violating PHL § 18.

Verisma's argument relies entirely on a gloss placed on CAFA's statutory language in Rasberry, a case out of the Eastern District of Texas, which is not controlling on this Court. Langsam v. Vallarta Gardens, No. 08 CIV.2222(LAP), 2009 WL 2252612, at *2 (S.D.N.Y. July 28, 2009) Controlling decisions include decisions from the United States Court of Appeals for the Second Circuit; they do not include decisions from other circuits or district courts. . . .") (citing Ades v. Deloitte & Touche, 843 F. Supp. 888, 892 (S.D.N.Y. 1994). The interpretation of "other class

action" as requiring a comparison between the "proof necessary to prevail in behalf of the class" may entail some "wading into the merits of an action merely to determine whether federal jurisdiction exists[,]" Meiman v. Kenton Cty., Ky., No. CIV.A. 10-156-DLB, 2011 WL 350465, at *6 (E.D. Ky. Feb. 2, 2011), which does not further judicial efficiency. In addition, such an approach appears to run counter to the general consensus among federal courts that "CAFA's language favors federal jurisdiction over class actions and CAFA's legislative history suggests that Congress intended the local controversy exception to be a narrow one, with all doubts resolved 'in favor of exercising jurisdiction over the case.'" Evans v. Walter Indus., 449 F.3d 1163, 1164 (11th Cir. 2006) (quoting S. Rep. No. 109-14 at 42, U.S. Code Cong. & Admin. News 3, 40); accord, e.g., Brook v. UnitedHealth Grp. Inc., No. 06 CV 12954(GBD), 2007 WL 2827808, at *4 (S.D.N.Y. Sept. 27, 2007). CAFA does not define what constitutes an 'other class action' other than to limit it to filed cases asserting similar factual allegations against a defendant." Vodenichar, 733 F.3d at 508. Undoubtedly, the representative plaintiff in Lagas and the representative plaintiffs in this case assert "similar factual allegations" against Verisma, namely that Verisma overcharged them for copies of medical records requested and paid for through their personal injury attorneys, in violation of the respective state's medical records law.

Finally, the Court finds that Verisma's position regarding the "no other class action" element is not supported by the recent unpublished decision from the Southern District of New York, <u>Moore, et al. v. IOD Incorporated, et al.</u>, No. 14-CV-8406(VSB) (S.D.N.Y. Mar. 4, 2016) ("<u>Moore</u>").[3] <u>Moore</u> was commenced in 2014, shortly after this action. Similarly to Plaintiffs here, the plaintiffs in <u>Moore</u> sought to assert claims under PHL § 18 and GBL § 349 on behalf of a class of qualified persons who requested copies of medical records from a New York health care provider who had contracted with a records-vendor (IOD). The plaintiffs paid the records-vendor for those copies and "allege[d] that the $0.75 per page rate charged by IOD was in excess of both its [costs] and the costs incurred by the [New York] Health Care Providers in copying the records." <u>Id.</u> at 5. <u>Moore</u> was dismissed in March of 2016, after the district court found that CAFA's local controversy exception applied. In stark contrast to the present case, the plaintiffs in <u>Moore</u> *conceded* that there were no "other class actions" filed within three years. The only elements of the local controversy exception in dispute in <u>Moore</u> were whether the plaintiffs sought "significant relief" from the local defendant and whether the local defendant's conduct formed a "significant basis" for the plaintiffs' claims.

---

[3] A copy of the <u>Moore</u> decision is attached as Exhibit B (Dkt #84-4) to the Declaration of Christopher Belter, Esq. dated November 30, 2016 (Dkt #84).

**II. Verisma, Although Not a "Provider," is Subject to NYPHL § 18**

Verisma argues that it cannot be held accountable under NYPHL § 18 because it merely fulfills medical records requests for health care providers, and is not a health care provider itself.

NYPHL § 18 "itself contemplates actions against a provider for its overcharges[,]" Ruzhinskaya v. Healthport Techs., LLC, 311 F.R.D. 87, 104 (S.D.N.Y. 2015). "[B]y its terms[, NYPHL § 18] is addressed to what a 'provider' may charge for fulfilling these requests—defining 'provider' as, in essence, a hospital or a doctor." Id. (citing N.Y. PUBLIC HEALTH L. § 18(1)(b)-(d). However, this Court's research has not uncovered any cases in which a court has interpreted the NYPHL—or analogous statutes from other states—to bar proceedings against vendors who provide release-of-information ("ROI") services to "providers." Interpreting NYPHL § 18, the district court explained in Ruzhinskaya, that "HealthPort[, the ROI vendor,] derives its statutory duty from each provider's statutory obligation. HealthPort effectively stands in the shoes of around 500 New York providers who have delegated to it the responsibility for responding to patient records requests." Ruzhinskaya, 311 F.R.D. at 104 (citation to record omitted). See also Pratt v. Smart Corp., 968 S.W.2d 868, 873 (Tenn. Ct. App. 1997) (It is true that the Act[, Tenn. Code Ann. § 68-11-304(a)(1), (a)(2)(A)] does not specifically mention such entities [i.e., independent copying services]; nevertheless, it is

clear in this case that Smart acted as the hospital's authorized agent, and, as such, could not perform acts which the hospital was forbidden by law to perform itself."); <u>Cotton v. Med-Cor Health Info. Sol'ns, Inc.</u>, 221 Ga. App. 609, 610 (Ga. Ct. App. 1996) (holding that trial court committed error under principles of statutory construction and agency law by holding that Georgia's Health Records Act, which governs the furnishing of the record a patient by a "provider[,]" Ga. Code Ann. § 31-33-1 <u>et</u> <u>seq.</u>, which is "defined as meaning all hospitals and other specified entities providing health care services[,]" Ga. Code Ann. § 31-33-1(2)," did not apply "to entities such as defendants which supply photocopying services for such providers even though such entities may be acting as the providers' agents"); <u>Young v. HealthPort Techs., Inc.</u>, 877 N.W.2d 124, 128-32 (Iowa 2016) (allegations that health care provider's records servicer had entered into contract with health care provider to fulfill patient requests for copies of medical records, and that servicer charged, and patients paid fees in excess of fees authorized under statute governing such record requests, Iowa Code § 622.10, stated claim against servicer, as provider's agent, for violation of statute, which defined "provider," <u>id.</u> § 622.10(6), as "any physician or surgeon, physician assistant, advanced registered nurse practitioner, mental health professional, hospital, nursing home, or other person, entity, facility, or organization that furnishes, bills, or is paid

for health care in the normal course of business"). The Court agrees with the analysis in Cotton, supra, regarding Georgia's analogue to NYPHL § 18. The Cotton court explained that

> the intent of the legislature was to ensure that patients have access to medical records in the custody and control of health care providers without being charged more than the reasonable costs of copying and mailing them. This intent would be completely defeated through a construction of the Act that would allow patients to be charged more than the reasonable copying and mailing costs if the providers hire others to perform the task of supplying the records.

Cotton, 221 Ga. App. at 611. The same reasoning applies to the New York Legislature's intent in enacting NYPHL § 18. [T]o interpret the statute in a contrary fashion would completely devastate the object the legislature sought to achieve in enacting [the medical records statute]." Young, 877 N.W.2d at 132; see also Pratt, 968 S.W.2d at 873 (agreeing with Cotton that objective of statute would be "completely defeated" if statute were interpreted so as not to apply to medical records vendors).

Verisma argues that an agent to a known principal has no liability to third parties for conduct undertaken on behalf of the principal. However, as Plaintiffs counter, this principle does not exempt an agent from liability for its own acts. See Rusyniak v. Gensini, 629 F. Supp. 2d 203, 223 n. 42 (N.D.N.Y. 2009) ("[A]n agent's tort liability [to a third party] is not based upon the contractual relationship between the principal and the agent, but upon the common-law obligation that every person must so act or use

that which he or she controls as not to injury another.") (quoting 3 AM. Jur. 2d Agency: Tort Liability § 298 (2008)). Here, the record reflects that per the terms of the contract between Verisma and the Rochester Healthcare Providers, it was Verisma who determined the amount to be charged to individuals requesting copies of their medical records.[4] Thus, Verisma's contention that it is shielded from liability because it was merely following instructions from the Healthcare Providers is belied by the terms of the Contract.

## III. Plaintiffs Have Standing Under NYPHL § 18

Verisma reasserts its unsuccessful argument that Plaintiffs lack standing to pursue their claims under NYPHL § 18 because their medical records requests were not accompanied by a power of attorney. In its previous Decision and Order, the Court stated, "[l]eaving aside the issue of whether Verisma waived this argument by nevertheless fulfilling Plaintiffs' allegedly unlawful requests and charging them $0.75 per page, the Court finds that it is without merit." (Decision & Order (Dkt #45 at 7). The argument fares no better this time around. Verisma has misconstrued the statute, which only requires a power of attorney to be submitted with a records "[w]here the written request for patient information . . . is signed by the holder of a power of attorney." NYPHL

---

4

Under the heading, "Verisma Billing Policies," in Schedule C to the Contract, it states that Verisma is responsible for "bill[ing] requestors based upon applicable state fee schedules." (Plaintiffs' Statement of Facts, ¶ 19).

§ 18(3)(h). "In the usual circumstance, such as the present case, the records request is signed by the patient, and no power of attorney is required."  (Decision & Order (Dkt #45 at 10).

## IV.  Plaintiffs Have Stated a Claim for Unjust Enrichment

Verisma contends that Plaintiffs have failed to state a non-duplicative claim for unjust enrichment under New York State law. The New York Court of Appeals has explained that a cause of action for unjust enrichment "is not available where it simply duplicates, or replaces, a conventional contract or tort claim." Corsello v. Verizon N.Y., Inc., 967 N.E.2d 1177, 1185 (N.Y. 2012) (citations omitted). This in keeping with the general principle that when a plaintiff has an adequate remedy at law, equitable remedies are unavailable. E.g., Samiento v. World Yacht Inc., 883 N.E.2d 990, 996 (N.Y. 2008).

An unjust enrichment claim is not duplicative if a "reasonable trier of fact could find unjust enrichment . . . without establishing all the elements for one of [Plaintiffs'] claims sounding in law." Nuss v. Sabad, 7:10-CV-0279(LEK/TWD), 2016 WL 4098606, at *11 (N.D.N.Y. July 28, 2016). The elements of a cause of action for unjust enrichment are as follows: (1) enrichment of the defendant, (2) at the plaintiff's expense, (3) the retention of which by the defendant is "against equity and good conscience . . . ." County of Nassau v. Expedia, Inc., 992 N.Y.S.2d 293, 296 (2d Dep't 2014) (citation omitted). A claim under New York General

Business Law ("NYGBL") § 349 has three elements: (1) the defendant's challenged acts or practices must have been directed at consumers, (2) the acts or practices must have been misleading in a material way, and (3) the plaintiff must have sustained injury as a result. Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 647 N.E.2d 741, 744-45 (N.Y. 1995) (citations omitted)). In contrast to a claim for unjust enrichment, a claim for violating NYGBL § 349 requires "[p]roof that [a] defendant's acts are directed to consumers[.]" Id. Thus, a reasonable trier of fact could find the elements unjust enrichment without establishing all the elements for Plaintiffs' NYGBL § 349 claim. Therefore, the Court finds that Plaintiffs' claim for unjust enrichment is not duplicative of their NYGBL § 349 claim.

Likewise, the Court finds that Plaintiffs' unjust enrichment claim is not duplicative of their claim based on NYPHL § 18. For example, Verisma contests liability under NYPHL § 18 because it is not a "health care provider" as defined by the statute. However, claims for unjust enrichment are not limited to claims against "health care provider[s]." Accordingly, the Court finds that Plaintiffs' unjust enrichment claim is not "duplicative" of their NYPHL § 18 claim, but rather is an alternative theory of liability. See Aramony v. United Way of Am., 949 F. Supp. 1080, 1084-85 & n.2 (S.D.N.Y. 1996) (where the defendant contests elements of one claim, the "plaintiff's unjust enrichment claim is not duplicative

because it may succeed independently," and is therefore "an acceptable alternative theory"); see also Spiro v. Healthport Techs., LLC, 73 F. Supp.3d 259, 272 (S.D.N.Y. 2014) (allowing plaintiffs to proceed on claims of unjust enrichment and violation of NYPHL § 18).

## CONCLUSION

For the foregoing reasons, Verisma's Motion for Partial Summary Judgment and Response in Opposition to the Motion to Certify Class (Dkt #84) is **denied.**

**SO ORDERED.**

**S/Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated:    May   , 2017
          Rochester, New York.