UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

ANN McCRACKEN, JOAN FARRELL,          **DECISION AND ORDER**
SARAH STILSON, KEVIN McCLOSKEY,       **No. 6:14-cv-06248(MAT)**
CHRISTOPHER TRAPATSOS, and
KIMBERLY BAILEY, as individuals
and as representatives of the
classes,

                Plaintiffs,

       -vs-

VERISMA SYSTEMS, INC., STRONG
MEMORIAL HOSPITAL, HIGHLAND
HOSPITAL, and UNIVERSITY OF
ROCHESTER,

                Defendants.

———————————————————

## INTRODUCTION

        This is a putative class action by Ann McCracken, Joan

Farrell, Sara Stilson, Kevin McCloskey, Christopher Trapatsos, and

Kimberly Bailey (collectively, "Plaintiffs") against Verisma

Systems, Inc. ("Verisma"), Highland Hospital ("Highland"), Strong

Memorial Hospital ("Strong"), and the University of Rochester

Medical Center ("URMC").[1] Plaintiffs allege that Defendants

systematically overcharged them and other patients who requested

copies of their medical records from the Rochester Healthcare

Defendants, in violation of New York Public Health Law ("PHL") §

———————————————

[1]
        Highland, Strong, and the URMC are collectively referred to as the
"Rochester Healthcare Defendants." Verisma and the Rochester Healthcare
Defendants are collectively referred to as "Defendants."

18.[2] Plaintiffs allege that Verisma and the Rochester Healthcare Defendants ignored the restriction in the statute that limits the amount that may be charged to produce the records "a reasonable charge . . . not exceeding the costs incurred," and not exceeding $0.75 per page. Instead, Plaintiffs allege, Verisma and the Rochester Healthcare Defendants imposed an across-the-board, uniform charge of $0.75 per page for all copies of medical records, even those produced electronically, in excess of their actual costs and in violation of PHL § 18. Additional facts will be set forth below as necessary to the Court's resolution of Plaintiffs' Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23 ("Rule 23").

## DISCUSSION

## I.    Plaintiffs' Proposed Class and Sub-Classes

Plaintiffs seek certification of one proposed class, the "URMC Medical Records Class," defined as follows:

> All persons who (1) requested copies of medical records (either by themselves or through a lawyer, personal representative, or other qualified person acting on their behalf) from a health care facility owned and/or operated by the University of Rochester, (2) were charged by or through Verisma Systems, Inc. for copies of such records in accordance with Verisma's "NY Fee Schedule PHL 18," and (3) paid such charges (either directly or through the person making the request on their behalf) and had their records released by or through Verisma on or after May

---

[2]

The statute provides in relevant part that "[t]he provider may impose a reasonable charge for all inspections and copies, not exceeding the costs incurred by such provider. . . . However, the reasonable charge for paper copies shall not exceed seventy-five cents per page." N.Y. Pub. Health L. § 18(2)(e).

14, 2011, excluding any principals or employees of Defendants.

Plaintiffs also seeks certification of two proposed subclasses, defined as follows:

> Highland Sub-Class: All persons in the URMC Medical Records Class who requested copies of medical records through Highland Hospital and whose records were released on or after May 14, 2011.

> Strong Sub-Class: All persons in the URMC Medical Records Class who requested copies of medical records through Strong Memorial Hospital and whose records were released on or after May 14, 2011.

(Plaintiffs Memorandum of Law ("Pls' Mem.") (Dkt #72) at 14).

## II. Application of the Rule[3] 23(a) Factors

Under Rule 23(a), a proposed class must satisfy the requirements of numerosity, commonality, typicality, and adequacy of representation. See Fed. R. Civ. P. 23(a)(1)-(4). "In addition to the express requirements of Rule 23(a), courts within the Second Circuit have consistently recognized the 'implied requirement of ascertainability.'" Hughes v. The Ester C Co., 317 F.R.D. 333, 348-49 (E.D.N.Y. 2016) (citing Brecher v. Republic of Argentina, 806 F.3d 22, 24 (2d Cir. 2015) (quotations and citations omitted in original); other citations and footnote omitted). The Court addresses these five factors in turn, below.

### A. Numerosity

---

[3]

Citations herein to "Rules" are to the Federal Rules of Civil Procedure, unless otherwise noted.

"Numerosity" for purposes of Rule 23(a) means that the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs have established that at least 38,000 medical record requests were fulfilled, invoiced, and paid pursuant to Verisma's NY Fee Schedule PHL 18 during the relevant time period. The Court finds that the numerosity requirement is readily met here. See Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995) ("Because numerosity is presumed at a level of 40 members, whether viewed as 700 tax-collecting jurisdictions or 300 assessing jurisdictions, the number of defendants vastly exceeds this threshold. Numerosity is therefore satisfied.") (internal citation omitted).

**B.    Commonality**

"Commonality" under Rule 23(a) exists when there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). While "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury[,]'" Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349–50 (2011) (quotation omitted), "[t]his does not mean merely that they have all suffered a violation of the same provision of law." Id. Rather, the class members' "claims must depend upon a common contention[,]" id., which is "of such a nature that it is capable of classwide resolution[.]" Id. The determination of the common contention's "truth or falsity" in turn "will resolve an issue that

-4-

is central to the validity of each one of the claims in one stroke." Id.

The Court finds that Plaintiffs have "affirmatively demonstrate[d] [their] compliance with" Rule 23(a)(2)'s commonality requirement by "prov[ing] that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." Id. (emphasis in original). Plaintiffs have identified several common questions, including whether PHL § 18 allows Defendants to charge per page for copies of medical records, even if their actual costs of producing such records are less; what actual costs did Defendants incur in fulfilling class members' records requests; which categories of costs are "reasonable" under PHL § 18; whether Defendants' actual and reasonable costs of producing medical records are less than the amount class members were charged pursuant to Verisma's NYPHL § 18 Fee Schedule; and whether Defendants' failure to disclose their actual costs of production would materially mislead a reasonable consumer, in violation of New York General Business Law ("GBL") § 349. See Ruzhinskaya v. Healthport Technologies, LLC, 311 F.R.D. 87, 98 (S.D.N.Y. 2015) ("Ruzhinskaya I") (commonality prerequisite for class certification met in action against hospital billing agent to recover for alleged violation of deceptive trade practices statute and provision of PHL § 18; underlying questions of law, in particular construction of critical statutory term "costs incurred," were common to class, and

most obvious common question of fact was whether hospital billing agent routinely billed statutory maximum cost-per-page to fill requests for patient records).

### C. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). "Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993) (citations omitted). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." Id. at 936-37 (citations omitted). Here, the class representatives' claims and those of the members of the proposed class arise from the same conduct by Defendants, i.e., that they uniformly charged more than their actual and reasonable costs incurred in fulfilling medical records requests, in violation of PHL § 18. All class members were charged under Verisma's NY Fee Schedule PHL § 18, which calculates class members' invoices at a $0.75 per page rate without regard to the actual costs in fulfilling a particular request. Verisma does not track its direct

-6-

or indirect costs expended in fulfilling a particular request; nor has URMC produced any evidence that it tracked such costs with regard to particular requests. Therefore, as Plaintiffs argue, the only way to determine any individual requester's damages is to calculate Verisma's aggregate costs and allocate them to particular requests. Plaintiffs indicate this methodology is the same for all class members and is the methodology its expert proposes to utilize. The Court therefore finds that the typicality requirement has been met. See Ruzhinskaya I, 311 F.R.D. at 99 ("The typicality requirement is met here, because Ruzhinskaya's claims and those of the class she seeks to represent arise from the same conduct by HealthPort (charging a uniform, and allegedly cost-unjustified, per-page charge of 75 cents) and because Ruzhinskaya and similarly situated requesters must prove similar facts, and make similar legal arguments to prevail.").

### D. Adequacy

Rule 23(a) demands that "the representative parties will fairly and adequately protect the interests of the class[.]" Fed. R. Civ. P. 23(a)(4). The Court accordingly must assess whether the representative plaintiffs' interests are "antagonistic" to the interests of the other class members, and whether the representative plaintiffs' attorneys are "qualified, experienced, and capable of conducting the litigation." Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000).

Verisma argues that Plaintiffs are inadequate to pursue classwide deceptive trade practices claims under GBL § 349, which applies solely to "consumer-oriented" conduct.[4] Verisma argues that Plaintiffs' records requests do not constitute "consumer-oriented" conduct because the records were ultimately used for litigation purposes. The Court previously disposed of this issue in connection with Verisma's motion to dismiss. (See Decision & Order (Dkt #45) at 15 ("The Court accordingly finds that Plaintiffs have pleaded conduct that is consumer-oriented for purposes of their GBL § 349 claims.")). Verisma has provided the Court with no basis to revisit its determination on this issue. Likewise, the proposed class representatives have averred that they will represent the interests of other class members as they would their own, and are not aware of any conflicts of interest between themselves and other individuals who requested medical records from Highland Hospital, Strong Memorial Hospital, or the University of Rochester Medical Center. (See, e.g., Declaration of Ann McCracken (Dkt #76), ¶ 24). The Court finds that representative plaintiffs are adequate for purposes of Rule 23(a)(3).

---

[4] See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25-26 (1995) (stating a GBL § 349(a) requires a plaintiff to allege the defendant's acts are (1) directed to consumers and (2) deceptive or misleading in a material way, and that (3) the plaintiffs have been "injured by reason thereof").

Verisma also argues that Faraci Lange LLP,[5] Plaintiffs' local counsel, is not adequate to serve as class counsel because the firm "waived" the class members' claims by continuing to pay $0.75 per page for medical records after Plaintiffs commenced the instant action. In Ruzhinskaya I, the records provider raised an argument against typicality based on similar facts, which the district court rejected. See Ruzhinskaya I, 311 F.R.D. at 99 ("As to the second alleged atypicality, the fact that [former attorney] Simonson, in requesting medical records, agreed to pay HealthPort's per-page charge did not waive Ruzhinskaya's right to challenge that charge under [PHL] § 18."). Likewise, the Court finds that Faraci Lange LLP's agreement to pay Verisma's per-page charge for medical records did not waive Plaintiffs' rights to challenge that charge under PHL § 18. While the common-law voluntary payment doctrine "bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law[,]" Dillon v. U-A Columbia Cablevision of Westchester, Inc., 100 N.Y.2d 525, 526 (2003) (citation omitted), Plaintiffs here "had no way to know at the time whether the charge exceeded [Verisma]'s 'costs incurred.' [Plaintiffs] also likely had no other practical means of obtaining [their] . . . medical records." Ruzhinskaya I, 311 F.R.D. at 99. Plaintiffs' attorneys' qualifications,

---

[5] Defendants have raised no arguments regarding the adequacy of Nichols Kaster PLLP to serve as class counsel.

experience, capability to conduct this litigation are not in dispute. Accordingly, the Court finds that the adequacy requirement is met as to class counsel.

### E. Ascertainability

The Second Circuit has identified two elements of ascertainability, explaining that a proposed class (1) must be 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member'; and (2) must be 'defined by objective criteria that are administratively feasible,' such that 'identifying its members would not require a mini-hearing on the merits of each case.'" In re Petrobras Sec., No. 16-1914-CV, ___ F.3d ___, 2017 WL 2883874, at *10 (2d Cir. July 7, 2017) (quoting Brecher v. Republic of Argentina, 806 F.3d 22, 24 (2d Cir. 2015) (quoting 7A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 1760 (3d ed. 1998); citations omitted). The Second Circuit recently rejected an "independent administrative feasibility requirement," finding it to be neither compulsory under Rule 23, nor complementary to the requirements enumerated in Rule 23. In re Petrobras Sec., 2017 WL 2883874, at *11; see also id. at *12 ("We conclude that an implied administrative feasibility requirement would be inconsistent with the careful balance struck in Rule 23, which directs courts to weigh the competing interests inherent in any class certification decision.") (citations omitted). "While

class members need not be ascertained prior to certification, they must be ascertainable at some stage of the proceeding." Bakalar v. Vavra, 237 F.R.D. 59, 64 (S.D.N.Y. 2006) (citations omitted). "The standard for ascertainability is 'not demanding' and is 'designed only to prevent the certification of a class whose membership is truly indeterminable.'" Ebin v. Kangadis Food Inc., 297 F.R.D. 561, 567 (S.D.N.Y. 2014) (citing Gortat v. Capala Bros., Inc., No. 07-CV-3629 (ILG), 2010 WL 1423018, at *2 (E.D.N.Y. Apr. 9, 2010)). Furthermore, the "class need not be so finely described . . . that every potential member can be specifically identified at the commencement of the action; it is sufficient that the general parameters of membership are determinable at the outset." Brecher, 806 F.3d at 25, n. 2 (citing 1 McLaughlin on Class Actions § 4:2 (11th ed. 2014).

Defendants' objections to ascertainability overlap to a certain extent with their arguments against predominance. (See Verisma's Memorandum of Law at 23; URMC's Memorandum of Law at 7-13). Defendants argue that ascertainability of the class is defeated because there are too many individualized issues as to whether class members suffered damages, and whether class members are "qualified persons" for purposes of PHL § 18.

Defendants argue that there is no way of knowing if all of the class members sustained actual damages. Verisma presents three additional scenarios that allegedly defeat ascertainability; these

all involve the circumstance of a patient's attorney making a records request on his or her behalf and then, based on the particular retainer agreement and the outcome of the underlying litigation, the patient is or is not required to reimburse the attorney for the costs of the requested records. Verisma argues that determining which payment and reimbursement scenario applies to each member of the prospective class would require an examination of, <u>inter alia</u>, the patient's retainer agreement and the circumstances of the patient's recovery in the underlying lawsuit. However, "it is reasonable to expect an attorney to abide by a fiduciary and/or contractual duty to return to the client money the client paid but which has been recouped. A well-designed claims process can further assure that any attorney claimant has notified the client of a recovery in this case and/or has certified the appropriate person to receive it." <u>Ruzhinskaya I</u>, 311 F.R.D. at 101 (internal citation omitted); <u>see also</u> N.Y. R. Prof. Conduct 1.15(a), N.Y. Comp. Code R. & Regs. tit. 22, § 1200.0 ("A lawyer in possession of any funds or other property belonging to another person, where such possession is incident to his or her practice of law, is a fiduciary, and must not misappropriate such funds or property or commingle such funds or property with his or her own."). Likewise, the proposed class is limited to persons who were charged $0.75 per page "in accordance with Verisma's 'NY Fee Schedule PHL 18,'" thus obviating Verisma's concern that the

proposed class sweeps in indigent requesters who were provided copies of medical records free of charge. Verisma also raises the possibility that a patient or her counsel may have been reimbursed by an opposing party in a lawsuit for which the records were requested, thus leading to a risk of double recovery. The district court in Ruzhinskaya I rejected this argument, noting that the parties could design a claims "process capable of assuring that a class member whose costs were later covered by a third party notifies that third party, so as to enable any claim among them to be resolved." 311 F.R.D. at 110; see also id. at 101 ("In the event of an adverse judgment, HealthPort faces no risk of a double recovery. It would be obliged to pay only once as to each request. The concern HealthPort expresses of a follow-on demand by the client after the attorney has obtained a recovery can be addressed by the inclusion in the claims process of an appropriate release.").

With regard to the issue of whether class members are "qualified persons" for purposes of PHL § 18, here, as in Ruzhinskaya I, the proposed class is limited to patients who requested copies of their medical records "either by themselves or through a qualified person." Therefore, "the class as defined would not include, for example, a patient's opposing counsel[,]" Ruzhinskaya I, 311 F.R.D. at 101, or an insurance company. It is administratively feasible for [Versima] to identify, in each

instance, the party it billed and the party from whom it received payment." Id. Again, to the extent it is necessary to confirm whether a particular request was submitted by a "qualified person" for purposes of PHL § 18, this concern can be addressed through a well designed claims process.[6] See Ruzhinskaya v. Healthport Techs., LLC, No. 14 CIV. 2921(PAE), 2015 WL 9255562, at *1 (S.D.N.Y. Dec. 17, 2015) ("Ruzhinskaya II") (The Court is confident . . . that an ably designed claims process can assure that the correct recipient is identified in a manner that leaves no meaningful risk of an undeserved double recovery.") (footnote omitted); see also Goldemberg v. Johnson & Johnson Consumer Companies, Inc., 317 F.R.D. 374, 399 (S.D.N.Y. 2016) ("[T]he Court concludes that the implied ascertainability requirement of Rule 23 can, at minimum, be met on the basis of sworn statements indicating class members purchased the products at issue in the necessary state during the necessary limitations period.").

Plaintiffs here have established the "general parameters of membership" in the proposed class and sub-classes "are determinable at the outset[,]" id., and they refuted Defendants' arguments that their proposed class and sub-classes are "truly indeterminable," Ebin, 297 F.R.D. at 567. Therefore, the Court concludes that the

---

[6] The fact that Defendants have identified certain requests, in the category of requests made pursuant NY Fee Schedule PHL § 18, as not having been submitted by "qualified persons," strengthens Plaintiffs' contention that Defendants are able to ascertain who is or is not a "qualified person" with reasonable certainty based on existing records. (See Plaintiffs' Reply (Dkt #88) at 6 & n. 11 (citations to record omitted)).

implied requirement of ascertainability has been met.

## III. Application of the Rule 23(b) Factors

Once the Rule 23(a) prerequisites are met, the party seeking class certification then must satisfy one of the subsections of Rule 23(b). See Fed. R. Civ. P. 23(b)(1)-(3). Plaintiffs argue that their proposed classes satisfy Rule 23(b)(3), which requires the Court to find that "the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphases supplied).

### A.    Predominance

Rule 23(b)'s "'predominance' requirement is satisfied if: (1) resolution of any material "legal or factual questions . . . can be achieved through generalized proof," and (2) "these [common] issues are more substantial than the issues subject only to individualized proof."'" In re Petrobras Sec., No. 16-1914-CV, 2017 WL 2883874, at *13 (2d Cir. July 7, 2017) ("Petrobras") (quoting Mazzei v. The Money Store, 829 F.3d 260, 272 (2d Cir. 2016) (further quotation omitted; ellipsis and brackets in original). Predominance "is not satisfied simply by showing that the class claims are framed by the common harm suffered by potential plaintiffs." Petrobras, 2017 WL 2883874, at *13 (citing  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997) ("Amchem") (noting that the "predominance criterion

is far more demanding" than the "commonality" requirement under
Rule 23(a); other citation omitted).

With regard to the PHL § 18 claims, the district court's
analysis in Ruzhzinskaya I is instructive. There, the district
court rejected certification of a statewide class, noting that if
such a class were certified,

> HealthPort could have unique defenses as to requests
> involving providers whose average costs exceeded 75
> cents. Where HealthPort could produce reliable evidence
> of provider-level costs in excess of 75 cents, it would
> be entitled to defend its costs with respect to that
> provider on that basis, and, if such evidence were
> credited, to prevail as to its pricing of requests made
> to that provider. Thus, because the class includes claims
> that HealthPort may choose to defend on the basis of
> provider-level costs, a statewide class would fail to
> satisfy the predominance requirement. . . .

Ruzhinskaya, 311 F.R.D. at 107. The district court rejected the
option of certifying provider-level subclasses to the statewide
class, because that approach "would result in a host of separate
inquiries into costs incurred, potentially one for each of the
500-some providers implicated by Ruzhinskaya's proposed class." Id.
However, the district court found, "a class drawn at the level of
requests to Beth Israel, Ruzhinskaya's provider, would satisfy the
predominance requirement, because HealthPort has failed to show
that it can establish per-page costs for each separate request made
to that institution or for any narrower group of requests than at

the provider level." Id.[7]

Here, Plaintiffs have limited the proposed class to "[a]ll persons who . . . requested copies of medical records (either by themselves or through a lawyer, personal representative, or other qualified person acting on their behalf) from a health care facility owned and/or operated by the University of Rochester[.]" Plaintiffs have further proposed two subclasses defined at the individual provider-level, namely, class members who requested copies of medical records through Highland, and class members who requested copies of medical records through Strong. These definitions obviate the "predominance" problems identified by the district court in Ruzhinskaya I, because Verisma has not demonstrated that it can establish per-page costs for each separate request made to Highland or Strong, or for any category of requests more narrowly circumscribed than requests at the provider level.[8]

---

[7]

While the district court in Ruzhinskaya I declined to modify, sua sponte, the plaintiffs' proposed class definition, it stated that if the plaintiffs moved to certify a class defined by patient record requests made to Beth Israel, it "expect[ed] to certify such a class." Ruzhinskaya I, 311 F.R.D. at 109. The district court ultimately did certify a class defined as follows: "All persons, who, at any time [during the class period] . . . , paid for, or are obligated to pay for, copies of an individual's patient information requested from Beth Israel Medical Center by a 'qualified person' as defined in [PHL] § 18(1)(g), for which copies HealthPort Technologies, LLC charged $0.75 per page. . . ." Ruzhinskaya II, 2015 WL 9255562, at *2.

[8]

For instance, Plaintiffs note, Verisma does not "keep any records of the labor and other costs expended processing and fulfilling each individual class member's records request." (Pl's Mem. (Dkt #72) at 23 (citing Deposition of Annette Fenwick ("Fenwick Dep.") (Dkt #73-4) at 33:13-18); see also id. at 10 (citing Fenwick Dep. at 11:18-20)). "[I]nstead of tracking costs on a request-specific basis, Verisma tracked the direct costs of client-specific departments, such as the labor and expenses related to on-site operations." (Id. at 11 (citing, inter alia, Fenwick Dep. at 31:19-32:5, 34:21-25, 45:2-4). Because

Where, as here, "the sole disputed element, 'costs incurred,' is to be determined based solely on the pro rata allocation of aggregated costs, common issues-within the universe of patient requests to which these aggregated costs all apply-necessarily predominate." Ruzhinskaya I, 311 F.R.D. at 103.

As to the GBL § 349 claims for unjust enrichment, Verisma argues that they are not amenable to class certification because the elements of the cause of action are not subject to class-wide proof. The district court in Ruzhinskaya II, 2015 WL 9255562, rejected the same argument, and distinguished the case on which Verisma principally relies, Vaccariello v. XM Satellite Radio, Inc., 295 F.R.D. 62 (S.D.N.Y. 2011). Unlike in Vaccariello, "the relevant issue here is simply whether [Verisma]'s charged fee was excessive. A class member's voluntary accession to such a fee is no defense." Ruzhinskaya II, 2015 WL 9255562, at *2 (citing, inter alia, Spiro v. Healthport Technologies, LLC, 73 F. Supp.3d 259, 276 (S.D.N.Y. 2014) (rejecting the argument that voluntary payment of HealthPort's fee would bar an unjust enrichment claim)). The Court finds that Plaintiffs have satisfied the predominance requirement.

## B.   Superiority

In determining whether a class action would be "superior" to

---

Verisma's business practice was to track costs by customer, i.e., by healthcare provider, the only way to determine the costs incurred in fulfilling a particular request is by analyzing aggregate costs for URMC and allocating those costs to individual requests. (Id. at 15-16 (citing Fenwick Dep. at 32:19-33:12, 33:19-34:19)).

other methods of litigating the plaintiffs' claims, Rule 23(b)(3) directs the court to consider "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

In light of the manner in which the proposed class and sub-classes have been defined by Plaintiffs here, the Court finds that a class action would be superior to the alternative of an individual lawsuit. See Ruzhinskaya I, 311 F.R.D. at 108 (finding class action under PHL § 18 would be superior to individual lawsuit, "assuming the class were limited to persons who requested records from a single provider, . . . thereby reducing the 'costs incurred' inquiry to a single provider-level inquiry"). The costs of bringing this lawsuit would be prohibitive for any single class member or even a small group of them, because "[t]he out-of-pocket costs alone (apart from legal fees) for an individual to bring this suit would have almost certainly dwarfed even the highest realistically imaginable recovery for that individual." Ruzhinskaya I, 311 F.R.D. at 108. This weighs heavily in favor of finding a class action to be superior in this case. See Amchem, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is

to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (internal quotation marks omitted). Because of the practical difficulties in pursuing an action such as this on an individual basis, class members have no discernable interest in "individually controlling the prosecution of separate actions[,]" Fed. R. Civ. P. 23(b)(3)(A). Furthermore, they have averred that they are unaware of "any litigation concerning the controversy already begun," Fed. R. Civ. P. 23(b)(3)(B), by individual class members. The Court accordingly finds that the superiority requirement has been met.

**CONCLUSION**

For the foregoing reasons, the Court grants Plaintiffs' Motion for Class Certification pursuant to Rule 23. Accordingly, the Court certifies a class defined as follows:

> All persons who (1) requested copies of medical records (either by themselves or through a lawyer, personal representative, or other qualified person acting on their behalf) from a health care facility owned and/or operated by the University of Rochester, (2) were charged by or through Verisma Systems, Inc. for copies of such records in accordance with Verisma's "NY Fee Schedule PHL 18," and (3) paid such charges (either directly or through the person making the request on their behalf) and had their records released by or through Verisma on or after May 14, 2011, excluding any principals or employees of Defendants ("the Class" or "the URMC Medical Records Class").

The Court also certifies two provider-level sub-classes, which are respectively defined as follows:

-20-

All persons in the URMC Medical Records Class who requested copies of medical records through Highland Hospital and whose records were released on or after May 14, 2011 ("the Highland Sub-Class").

All persons in the URMC Medical Records Class who requested copies of medical records through Strong Memorial Hospital and whose records were released on or after May 14, 2011 ("the Strong Sub-Class").

The Court appoints Ann McCracken, Joan Farrell, Sara Stilson, Kevin McCloskey, Christopher Trapatsos, and Kimberly Bailey as class representatives. Finally, the Court appoints Faraci Lange LLP and Nicholas Kaster PLLP as class counsel.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/ Michael A. Telesca**

_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated:    July 28, 2017
          Rochester, New York.